ANTHONY KOMAR, Respondent, *v.* DUN & BRADSTREET CO., INC., et al., Appellants, et al., Defendant.

DUN & BRADSTREET CO., INC., et al., Third-Party Plaintiffs-Appellants, *v.* A. GREENE CO., INC., Third-Party Defendant-Respondent.

First Department, July 19, 1954.

*Archie B. Morrison* of counsel (*Daniel R. Harvey* and *Robert A. Dwyer* with him on the brief; *William S. O'Connor,* attorney), for appellants.

*Eugene J. Morris* of counsel (*Albert J. Rosenthal* with him on the brief; *Gustave G. Rosenberg* and *Leon Himmelfarbe,* attorneys), for respondent.

*Harry Schechter* of counsel (*Bernard Katzen* and *William H. Stieglitz* with him on the brief; *Bernard Katzen,* attorney), for third-party defendant-respondent.

CALLAHAN, J.   On February 3, 1950, the George A. Fuller Company, as general contractor, entered into an agreement with A. Greene Co., Inc., subcontractor, for the demolition of a number of buildings in New York City.   The demolition was in preparation of a site for the construction of a large office building by Fuller, as general contractor, for Dun & Bradstreet Co., Inc., the owner.

In the course of the work, and on May 23, 1950, plaintiff, Anthony Komar, who was employed by Greene as a " bar-man ", was prying loose part of the front wall of one of the buildings. He was sitting astride the wall as he worked, and fell off into the cellar with the stone he had pried loose.   The wall was about twelve feet above the ground on the streetside and about twenty-five feet above the cellar floor on the inside of the building.

The trial court submitted the issue of liability to the jury against the owner and general contractor solely on the theory of negligence arising out of breach of a claimed statutory duty. It dismissed defendants-appellants' claim over for indemnity against the subcontractor, A. Greene Co., Inc.

The claimed breach of statutory duty was the failure to furnish a scaffold, and the question submitted to the jury was whether such failure was a proximate cause of the accident suffered by plaintiff.   The jury returned a verdict for $100,000 damages against both defendants-appellants.

The statute alleged to have been breached was a rule of the Board of Standards and Appeals of the State Labor Department, having the force of law, and known as rule 23.-7.5.11 of the Industrial Code, which reads: " Demolition requiring scaffolds. Whenever workmen are engaged in the removal of any part of a building or structure, which part is more than 12 feet above a floor, platform or the ground, there shall be provided for such workmen suitable scaffolds constructed in accordance with rule

23-8.2 ''. (N. Y. Official Compilation of Code, Rules & Regulations, Vol. 3, p. 664.)

Concededly, no scaffold had been supplied on either side of the wall at the time of the accident, and there was evidence that the wall was over twelve feet high. Thus, there was proof of noncompliance with the rule aforesaid. The principal issue is whether these defendants-appellants (the owner and general contractor) were required by law to furnish such scaffold. This issue is one of law depending on the construction and application of the relevant statutes and rules.

Section 240 of the Labor Law, insofar as pertinent, reads as follows: '' 1. A person employing or directing another to perform labor of any kind in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed or directed.''

It will be noted that the section refers specifically to demolition work, among other activities, and provides that the person employing or directing another to perform such work shall erect or cause to be furnished scaffolds, among other devices, necessary for the protection of these workers. The section lists not only scaffolds, but such other devices as hoists, stays, ladders, blocks, pulleys, braces, irons and ropes. This section has been construed by many decisions of the higher courts of this State to place the duty of furnishing these devices on the immediate employers of the labor, and this would mean the subcontractor when he is in charge of performance. It would not mean an owner or general contractor, unless such person was actually doing the work himself without the intervention of a subcontractor. (*Iacono* v. *Frank & Frank Contr. Co.,* 259 N. Y. 377; *Sweeney* v. *Spring Products Corp.,* 257 App. Div. 104, affd. 282 N. Y. 685; *Glass* v. *Gens-Jarboe, Inc.,* 280 App. Div. 378, affd. 306 N. Y. 786; *Ellithorp* v. *Adams Rice Constr. Corp.,* 281 App. Div. 917.)

The trial court recognized that insofar as section 240 is concerned, it placed no duty to furnish a scaffold on the owner or general contractor, but held that rule 23-7.5.11 did obligate these defendants-appellants to furnish such scaffolds. It is the correctness of this latter ruling that presents the principal question upon this appeal.

The theory of plaintiff, accepted by the trial court, was that rule 23-7.5.11 was applicable to the owner and general contractor by force of the provisions of subdivision 6 of section 241 of the Labor Law.

Section 241 is entitled " Protection of employees on building construction or demolition work including excavation work in connection therewith ". The opening sentence reads: " All contractors and owners, when constructing or demolishing buildings or doing any excavating in connection therewith, shall comply with the following requirements ". Then follow five paragraphs or subdivisions referring to the filling of floor space, the laying of underflooring, the planking of floor space, and the guarding of elevator shaftways. All of these paragraphs quite apparently refer to construction activities. Finally, subdivision 6 (repeated as subdivision 7), reads as follows: " The board of standards and appeals may make rules to provide for the protection of workmen in connection with the excavation work for the construction of buildings, the work of constructing or demolishing buildings and structures, and the guarding of dangerous machinery used in connection therewith, and the owners and contractors for such work shall comply therewith."

It can thus be seen that these sections 240 and 241 differ squarely as to who has the duty of compliance. Section 240 places compliance on the immediate employer of the labor to furnish the devices referred to therein. Section 241 places the duty of compliance on the owner and all contractors. Both sections involve demolition work, but the first five subdivisions of section 241, which are the only ones setting forth specific safety measures, all refer to erection work. It is, therefore, left to such rules as might be adopted under subdivision 6 by the Board of Standards and Appeals to provide for specific safety measures for demolition workers.

The difference between sections 240 and 241 in respect to the duty of compliance is readily understandable as to the specific safety measures referred to in the two sections. It becomes confusing only with respect to the rules adopted by the board. The immediate employer directing the performance of the work is the one who would reasonably be expected to furnish devices such as scaffolds, ladders, hooks, pulleys, ropes, etc. These devices normally have close relationship to the performance and progress of the work. It could hardly be expected that an owner not directing another in the performance of the work should know what devices would be required on the job, nor the time when they would be needed. On the other hand, the covering

of floors and guarding of shaft openings specifically provided for in section 241 are quite as normally a matter for the one in general charge of the job as a whole. The duty of safeguarding such openings is akin to the duty of safeguarding common walks and ways, a task usually imposed by law on the general contractor and owner.

The difficulty of construction arises in this case because the Legislature saw fit to provide in section 241 (subd. 6) for the making of rules by the Board of Standards and Appeals for the protection of workmen in construction and demolition work, and provided that such rules, when promulgated, should be complied with by the owner and contractor for such work.

The trial court held that rule 23-7.5.11 had been promulgated pursuant to subdivision 6 of section 241, and decided that the duty to supply the scaffold referred to in this rule was a nondelegable duty resting on the owner and general contractor on this demolition job. It is the correctness of this ruling that is questioned by these appellants.

It may be well to note that section 240 provides only generally for the furnishing of scaffolds '' where necessary '' to provide protection to building demolition workers. It is specific as to the persons who shall furnish such scaffolds, but is broad and general as to the circumstances under which scaffolds will be called for. Rule 23-7.5.11, on the other hand, specifies the circumstances under which scaffolds will be required to protect demolition workers, but does not attempt to say who is to have the duty of furnishing them. Section 240 and rule 23-7.5.11 may readily be read together, without creating conflict, by construing rule 23-7.5.11 to provide when the scaffold is to be furnished and section 240 to provide by whom it is to be furnished. It is only if we assume, as the trial court did, that rule 23-7.5.11 is promulgated solely under subdivision 6 of section 241 that we read into the rule the provision that owners and general contractors must comply with it, and thus create conflict with section 240.

Section 241 is not the only section authorizing the adoption of rules. Earlier sections of the Labor Law (§§ 27-a, 28, 29) granted broad rule-making powers to the Board of Standards and Appeals. The question naturally arises as to the intended scope and application of the new grant of power provided in section 241. Did the Legislature intend (1) to confer a special rule making power limited to the covering of floor openings and guarding of shaftways, the subject matter of the five immediately preceding subdivisions of section 241; or did it intend

(2) to grant additional powers not limited to that context with respect to construction and demolition work generally?

If this power to make rules pursuant to subdivision 6 of section 241 was intended to be limited to its immediate context, viz., the guarding of floor openings and shaftways, rule 23-7.5.11 was not promulgated pursuant to subdivision 6 because it does not deal with this subject matter. Under such construction, it would not apply to the owner and general contractor. Assuming, however, that the second intention was paramount with the Legislature so as to permit the making of any rules that would protect construction or demolition workers generally, was it the legislative purpose that in making such rules the policy previously expressed in section 240 be followed? Might the duty to furnish scaffolds be shifted by rule to owners and general contractors, or the obligation placed on owners and general contractors in addition to that already placed on the immediate employer of a demolition worker?

The power to make rules does not include the power to alter or create a conflict with a statute (*Pollard* v. *Trivia Bldg. Corp.,* 291 N. Y. 19; *Gerber* v. *Seaich Realty Co.,* 259 App. Div. 667).

A study of the history and development of sections 240 and 241 may assist us in construing them. Prior to the passage of chapter 603 of the Laws of 1930, demolition workers had not been included in the sections. Apparently, it was the purpose of the Legislature of 1930 to afford demolition workers equal protection with other construction workers, for sections 240, 241 and 242 (as well as Penal Law, §§ 1276, 1277 providing criminal sanctions) were amended by inserting a provision to include demolition workers along with other journeymen in the building trades. Clearly, the effect of these amendments was to treat demolition workers the same as other workers. Scaffolds were required to be furnished such workers " by the person employing or directing another to perform demolition work ". The precise benefit that would be afforded demolition workers in 1930 by including them in section 241 is not clear, for that section was then composed of five subdivisions, all of which appear to relate to erection of buildings. There was no rule-making power granted in 1930 by section 241. This was not inserted until 1932 (L. 1932, ch. 470). But when the rule-making power was so granted, construction workers and demolition workers were again treated alike.

Thus since 1930 we find a repeated manifestation of intent to afford demolition workers like protection with other construc-

tion workers. But the interpretation placed on rule 23-7.5.11 by the trial court would afford demolition workers a distinct advantage over other construction workers. All other construction workers would have the right to have scaffolds furnished them by their immediate employers. A breach of that duty would afford them no right to damages only that of workmen's compensation. But because rule 23-7.5.11, as construed by this trial court, would place the duty on the owner and general contractor to supply the scaffolds under the circumstances mentioned in that rule, demolition workers would have a third-party action when the rule is not complied with.

That this was not the intention of the Legislature has been indicated by what we have already said. That it was not the intention of the Board of Standards and Appeals is further indicated. For instance, rule 23-1.2.1 opens the general provisions of the Industrial Code, and provides as follows: '' 23-1.2.1. Responsibility of employer. Every person employing, or directing another to perform labor of any kind in the erection, alteration, repair, renovation or demolition of any building or structure, and any excavation in connection therewith, shall cause such operations to be so arranged, operated and conducted and shall furnish or erect or cause to be furnished or erected for the performance of such operations, such scaffolding, hoists, ladders, derricks and other equipment as to give proper protection to the lives, health and safety of all persons employed therein and frequenting the construction site, as herein provided.'' (N. Y. Official Compilation of Codes, Rules & Regulations, Vol. 3, p. 651.)

Thus the rule-makers indicated that, as to furnishing scaffolds, the rules were intended to follow the provisions of section 240 as to responsibility.

Of course, a grant of broad rule-making power to the Board of Standards and Appeals to protect demolition workers would afford the right to add new safety devices for the protection of these workers, and it might well be argued that these new devices would have to be furnished by owners. But as to devices already specified in section 240, and by that section directed to be furnished by the immediate employer, it would seem that the Legislature did not intend that any rule could require them to be furnished by persons other than such immediate employer. The policy of the law as to who should furnish such devices had already been set by statute. It would be an unwarranted interference with the legislative scheme to permit rule-makers to

require that as to demolition or construction workers such devices must be furnished by others. Furthermore it could only create confusion if responsibility for devices such as scaffolds, ladders, blocks, pulley ropes, etc., were to be divided and placed on several heads. As contrasted with making a floor opening safe or guarding a shaftway, the latter tasks could readily be placed on several heads without causing interference with the work.

We do not contend that the owner is exempted generally from rules made under section 241. We hold that he is not required to supply the scaffolding referred to in rule 23-7.5.11. The rule omits any designation of the person to comply. It must be assumed that the rule-makers intended that the rule would be carried out as provided in section 240, because it relates to a device mentioned in 240. This leaves the rule-maker free to cast the duty as to new devices on an owner or general contractor.

This construction does not whittle away the protection intended to be supplied to demolition workers, as suggested in the dissenting opinion. On the contrary, the rule serves a useful purpose by saying when a scaffold must be furnished, i.e., when a wall more than twelve feet above the ground is being demolished. Section 240 had not so provided. Rule 23-7.5.11 was intended to say under what specific circumstances a scaffold must be furnished to protect demolition workers. Section 240 and rule 23-1.2.1 had already provided by whom the scaffold was to be furnished. By this interpretation, demolition workers get the same protection afforded construction workers, i.e., the right to a scaffold to be furnished by the immediate employer, plus the added protection of making the duty specific.

In promulgating its rules known as the Industrial Code, the Board of Standards and Appeals expressly stated that they were acting under the powers granted them by sections 27-a, 28, 29, 200, 240 and 241 of the Labor Law. It is to be noted that they refer to section 240, although that section grants no rule-making power. We find no reason to believe that the Legislature or the Board of Standards and Appeals ever intended to have rule 23-7.5.11 considered an attempt to direct the owner to furnish the scaffold on demolition work, contrary to what section 240 states, merely because subsection 6 of section 241 made the owner responsible for compliance with rules adopted under that subdivision. Rule 23-1.2.1 indicates a contrary intent.

In this view of the statute, no liability was established as to defendants-appellants, the owner and general contractor. The judgment appealed from should be modified by reversing the judgment against defendants-appellants, with costs, and dismissing the complaint and, as so modified, the judgment should be affirmed.

BASTOW, J. (dissenting). The majority of the court in reversing a judgment obtained by an injured workman and dismissing his complaint is holding that upon the facts here presented the owner — Dun & Bradstreet Co., Inc.— and the contractor — George A. Fuller Company — were not required to comply with section 241 of the Labor Law and rule 23-7.5.11 of the Industrial Code. We disagree with that holding.

It is necessary for a better understanding of the problem presented to trace the origin and development of section 241 of the Labor Law and the stated rule of the Industrial Code. For many years prior to 1921, section 20 of the Labor Law (L. 1897, ch. 415, as amd. by L. 1909, ch. 36, as amd.) imposed upon " All contractors and owners, when constructing buildings in cities " the duty to take certain specified safety precautions in the course of construction. The sole object of the section was to protect the workmen employed upon the building from bodily injury (*Clinton* v. *Boehm,* 139 App. Div. 73).

When the Labor Law of 1909 was repealed and the so-called new Labor Law was enacted by chapter 50 of the Laws of 1921, the six operative sentences of former section 20 were transferred to a new section 241 and subdivided into six separate subdivisions. It is to be remembered that all of these subdivisions mandating the owner and contractor to do certain things for the safety of the workman related solely to construction as distinguished from demolition. The section so states and a reading of the mandated duties clearly shows that they relate only to constructing a building.

By chapter 603 of the Laws of 1930, the section was broadened to cover not only construction but demolition. The amendments, however, consisted of amending the catchline and the opening sentence so that the latter read " All contractors and owners, when constructing *or demolishing* buildings, shall comply with the following requirements ". (Italics supplied.) The six subdivisions, except for two amendments, immaterial here were left unchanged. There was thus presented a situation where owners and contractors were mandated to do nothing when demolishing buildings because all the stated requirements related

to construction work and not demolition. Thus, subdivisions 1 and 2 referred to action to be taken " as the building progresses ". Subdivision 3 related to a requirement where " double floors are not to be used ". Subdivision 4 required certain things to be done where the " steel work is being erected ". Subdivisions 5 and 6 related to action to be taken " in the course of construction ".

It is apparent that the Legislature discovered that the owner and contractor had not been required to do anything in connection with demolition work because two years later section 241 was broadened to require owners and contractors to comply with the same stated requirements when " doing any excavating in connection " with constructing or demolishing buildings. By the same enactment (L. 1932, ch. 470) a new subdivision was added which provided that " The industrial board may make rules to provide for the protection of workmen in connection with the excavation work for the construction of buildings and the work of demolishing buildings, and the owners and contractors for such work shall comply therewith ".

The subdivision was clarified by chapter 144 of the Laws of 1934 so that no doubt could remain that the rule making power was not limited to excavation work for demolition. Except for placing the rule-making power in the Board of Standards and Appeals (L. 1938, ch. 657, § 6) and renumbering the subdivision as 6 (L. 1947, ch. 683, § 7) this subdivision has remained unchanged to the present. It states that " The board of standards and appeals may make rules to provide for the protection of workmen in connection with the excavation work for the construction of buildings, the work of constructing or demolishing buildings and structures, and the guarding of dangerous machinery used in connection therewith, and the owners and contractors for such work shall comply therewith."

It is to be noted that even after the amendment of 1932 and 1934 there were no stated requirements for owners and contractors to comply with when demolishing buildings. One must turn to the Rules of the Board of Standards and Appeals to find such requirements. Therein appears rule 23-7.5.11 providing for suitable scaffolds constructed in accordance with rule 23-8.2 " Whenever workmen are engaged in the removal of any part of a building or structure, which part is more than 12 feet above a floor, platform or the ground ". (N. Y. Official Compilation of Codes, Rules & Regulations, Vol. 3, p. 664.) The trial court submitted the issue of liability to the jury solely on the theory

of negligence based on the alleged violation of section 241 and this rule.

As we understand the majority opinion it holds in effect that an owner is exempted from compliance with this rule; that the rule was not intended to implement section 241 but section 240 of the Labor Law because it relates to scaffolding — a device mentioned in that section. We are unable to agree with this conclusion.

Section 240 relates exclusively to employers and provides in part that " A person employing or directing another to perform labor of any kind in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect   *   *   *   for the performance of such labor scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed or directed." The section further provides that under certain conditions scaffolding shall have a safety rail attached and shall be so fastened as to prevent it from swaying from the building. A third subdivision provides for the minimum weight load required.

It seems to us that a study of Industrial Code Rule No. 23 clearly shows that the rule in question was promulgated to carry out the provisions of section 241. Thus, the requirements found under rule 23-4 (Excavation operations); rule 23-5 (Erection of buildings and structures); rule 23-6 (Repair and renovation operations) and rule 23-7 (Demolition operations) all implement section 241. On the other hand, rule 23-8 (Equipment) relates to scaffolding and other equipment referred to in section 240.

The prevailing opinion expresses the view that the interpretation placed on rule 23-7.5.11 by the trial court would afford demolition workers an advantage over construction workers; that the latter would have the right to have scaffolds furnished them by their immediate employers and in the event of a breach of the duty would be restricted to their rights of workmen's compensation whereas demolition workers would have the added right under the rule to a third-party action against the owner. The obvious answer is that the specific rule under consideration applies to demolition work and not construction work.

Moreover, an examination of the rules discloses numerous examples of protection furnished both construction and demolition workers. Thus, under rule 23.5 relating to erection of

buildings and structures we find a provision in rule 23-5.4 requiring that whenever any workman is required to work on the exterior face of the wall of any building from a scaffold which is more than three stories or thirty-five feet above grade a catch platform shall be constructed. Similarly, under rule 23.7 relating to demolition work there is a like requirement for catch platforms in rule 23-7.5.12. Here are substantially identical provisions giving protection to both construction and demolition workers. It is our opinion that these were rules made pursuant to subdivision 6 of section 241 " to provide for the protection of workmen in connection with * * * the work of constructing or demolishing buildings and structures * * * and the owners and contractors for such work shall comply therewith."

It seems clear that a " catch platform " as described in rule 23-8.9 falls within the classification of " other devices " set forth in section 240 in addition to scaffoldings. The conclusion reached by the majority would appear to exempt owners and contractors from liability or responsibility to either construction or demolition workers for the furnishing of " catch platforms ". Once a device or item may be found in section 240, an injured workman may look only to his employer under the holding of the majority. An owner or contractor is relieved of any liability or responsibility.

It is to us a finely drawn distinction that hereafter an owner under the provisions of section 241 will be required to follow the course of construction or demolition from day to day and see that floors are covered and shaft openings are guarded and other rules of the Industrial Code are complied with but may turn his back and shut his eyes when employees undertake work without the required scaffolding or catch platforms or other devices encompassed within section 240 because the Legislature in an effort to further protect the workman has also placed upon the employer the duty to furnish these devices.

It is our opinion that rule 23-7.5.11 was promulgated to carry out the provisions of section 241 and was a requirement that all owners and contractors were mandated to comply with and upon the facts here presented the case was properly submitted to the jury and the verdict against the owner and contractor should stand. The section concededly was enacted to protect the workman. The safety provisions of the section should not be whittled away except upon a plain and clear showing that such was the legislative intent. On the contrary, the intent of the Legislature was to give the laborer in the hazardous work

of construction, demolition and excavation added protection in the form of duties cast upon the owner and contractor with ensuing liability for failure to meet those requirements. The result reached by the majority carves a large slice out of the area of protection given to such workmen.

In our opinion, however, the verdict of $100,000 was excessive. The judgment appealed from should be modified by reversing that part thereof in favor of plaintiff against defendants, with costs to abide the event, and ordering a new trial, on the ground that the verdict is excessive, unless plaintiff stipulates to reduce the verdict to $60,000 in which event the judgment, as so modified, should be affirmed.

DORE and BOTEIN, JJ., concur with CALLAHAN, J.; BASTOW, J., dissents and votes to reverse and order a new trial unless the plaintiff stipulates to reduce the verdict to $60,000, in which event the judgments, as so modified, should be affirmed, in opinion, in which BREITEL, J., concurs.

Judgments reversed and the complaint dismissed, and judgment is directed to be entered herein in favor of the defendants-appellants dismissing the complaint, with costs. Settle order on notice.

Republished decision, July 22, 1954.

Judgment modified by reversing that part thereof which grants judgment in favor of plaintiff against defendants, with costs, and the complaint dismissed, with costs and, as so modified, affirmed. Present — DORE, J. P., CALLAHAN, BREITEL, BASTOW and BOTEIN, JJ. Opinion by CALLAHAN, J. BREITEL and BASTOW, JJ., dissent and vote to reverse and order a new trial unless plaintiff stipulates to reduce the verdict to $60,000 in which event the judgment, as so modified, is affirmed; dissenting opinion by BASTOW, J. Order filed.*

---

* Also printed, 284 App. Div. 804.— [REP.