RALPH BRUNO, Respondent-Appellant, *v.* ALMAR RESIDENCES CORP., Defendant-Appellant-Respondent and Third-Party Plaintiff-Appellant. LEO BRILL, Doing Business as CONSOLIDATED CONTRACTING Co., Third-Party Defendant-Respondent.

First Department, June 13, 1961.

*Norman Bard* of counsel (*Max Jackrel* with him on the brief; *Jackrel & Hoffman,* attorneys), for respondent-appellant.

*Alexander E. Rosenthal* of counsel (*Irving Segal,* attorney), for appellant-respondent.

*James J. McLoughlin* of counsel (*Anthony J. De Cicco,* attorney), for third-party defendant-respondent.

McNALLY, J. In an action for personal injuries, plaintiff was awarded a verdict of $37,500 against defendant Almar Residences Corp., the owner of premises 418 East 78th Street, Manhattan, which at the time of the happening of the accident was in the process of being altered and renovated by third-party defendant Leo Brill, doing business as Consolidated Contracting Co. The plaintiff was an employee of Brill. The trial court set the verdict aside and directed a new trial unless plaintiff stipulated to reduce it to $20,000. Plaintiff refused to so stipulate. Thereon was made the order setting aside the verdict. Plaintiff appeals from the order setting aside the verdict; defendant appeals from the part of the order denying its motion to dismiss the complaint. We conclude the complaint should be dismissed.

Prior to May 9, 1958, third-party defendant Leo Brill, doing business as Consolidated Contracting Co., entered into an agreement with the defendant, the owner thereof, to renovate the

four-story multiple dwelling at 418 East 78th Street, Manhattan. The agreement, among other things, required Brill to install ventilating ducts in the westerly ventilating shaft of the premises. The shaft was 36 inches wide, 7 feet in depth and extended from the first to the fourth floors. During the progress of the work no person other than Brill employees entered the shaft. The fourth floor ducts were installed on May 8, 1958, the day prior to the occurrence.

In the course of the fourth floor installation, plaintiff, an employee of Brill, stood on a plank eight inches wide and was handed lengths of ducts which he bracketed and fastened to the wall of the shaft. After the fourth floor installation, plaintiff and one Iles, also employed by Brill, proceeded to the third floor. Because of water and sewer pipes extended therein there was not enough space at the third floor level of the shaft to insert a plank eight inches in width. Iles, at the direction of Brill, selected a stud, three inches by four inches and eight feet long, which he inserted through a window opening into the shaft. One end of the stud rested on a batten attached to the opposite wall and the other end was nailed to the window sill. Iles thereafter proceeded to the second floor where he stationed himself on an eight-inch plank and handed lengths of ducts to the plaintiff who strapped and fastened them to the shaft wall.

The work on the third floor commenced on May 8, 1958 and continued on May 9, 1958, the day of the occurrence. On May 9, 1958, after completing his part of the work relating to the third floor installation, Iles removed the plank on the second floor, placed it at the first floor level of the shaft and proceeded to work there. Within five minutes thereafter the stud on which plaintiff stood broke causing him to fall to the basement and sustain the injuries complained of.

No liability attaches to the defendant by reason of the failure of the stud. The obligation to supply an adequate device to properly support and protect the plaintiff was on his employer, the third-party defendant Brill. (Labor Law, § 240; *Iacono* v. *Frank & Frank Contr. Co.*, 259 N. Y. 377.) Plaintiff does not contend otherwise; his brief in this court states: "nor is there any claim made upon this appeal that the defendant was liable for the plank which broke on which the plaintiff was standing at the time of the accident."

Plaintiff relies upon sections 241 and 241-a of the Labor Law. The entire court is in agreement that section 241-a is inapplicable to the ventilating shaft here involved; it is not within the category of structures therein specified, to wit: "elevator shaftways,

hatchways and stairwells of buildings ''. Mr. Justice BREITEL, however, is of the opinion that the following Regulations of the Board of Standards and Appeals .promulgated under section 241 were violated:

" 23-3.9. *Falling hazard.* Every opening or place into which a person may fall shall be provided with a safety railing as specified in rule 23-3.24 or shall be otherwise effectively protected. Where such protection cannot be provided, life nets or approved safety belts with lifelines attached shall be furnished for and used by the workmen unless otherwise determined by the Commissioner. Where work is being performed over water and a drowning hazard exists, a boat with a person in attendance and equipped with a life preserver, shall be stationed below while the work is going on.

" 23-3.24. *Safety railing.* Unless otherwise herein specified, safety railings shall consist of 2" x 4" wooden rail not less than 36 inches nor more than 42 inches above the walking level, securciy supported by 2" x 4" posts at intervals of not more than eight feet with a 1" x 4" midrail and a toe board at least four inches high. The handrail shall be smooth and free from splinters or protruding nails. Other material or construction may be used provided the assembly assures equivalent safety.

" 23-39.14. *Protection of workmen in shafts.* a. Persons required to perform work in or at shafts, other than the installation, maintenance or repair of elevators shall be provided with the following protection. To provide protection from falling material, a tight covering of two inch planks, three-quarter-inch plywood or equivalent, shall be installed so as to cover the entire cross sectional area of the shaft at a point not more than two stories above the level where men are working. In addition, to minimize injuries from falls, a tight wooden platform of two inch planks, three-quarter-inch plywood or equivalent, or a life net of two inch mesh wire or Manila rope shall be installed not more than one story below the level where men are working."
(N. Y. Off. Comp. of Codes, Rules & Regulations [7th Supp.], pp. 392, 394, 430.)

Plaintiff's theory is that the absence of a tight covering of planking on the second floor level of the shaft was a violation of rule 23-39.14. Iles, like the plaintiff, was standing on a plank at the second floor level while passing sections of ducts to the plaintiff on the third floor. Iles was the fellow employee of plaintiff who removed the plank at the second floor level five minutes before the accident happened. The obligation to furnish the plank on the second floor, as in the case of the stud on which plaintiff stood, was that of Iles' and plaintiff's employer, Brill.

"In the striving after safety, owner or contractor is not required to go beyond the bounds of what is practicable and reasonable." (*Caspersen* v. *La Sala Bros.*, 253 N. Y. 491, 495.) The physical limitations and fluid conditions existing at and prior to the occurrence emphasize the prime necessity of furnishing safe scaffolds and devices and that Brill and his employees were best able to determine the sequence and duration of their employment. (*Chaney* v. *New York City Tr. Auth.*, 12 A D 2d 61, 66.) Involved is the duty imposed by section 240 of the Labor Law, the discharge of which was the onus of the employer Brill, whose employees alone occupied the shaft. The rules promulgated under section 241 of the Labor Law do not serve to shift to an owner the obligation imposed by section 240 on the employer. (*Komar* v. *Dun & Bradstreet Co.*, 284 App. Div. 538, 545–546.)

The order should be reversed, on the law. The facts have been reviewed and the finding of excessiveness should be affirmed. The complaint should be dismissed, with costs to defendant-appellant. The cross complaint should be dismissed, without costs.

BREITEL, J. (dissenting). I dissent and vote to affirm on the ground that the evidence establishes violation of rules 23-3.9, 23-3.24, 23-39.14 of the State Industrial Code which regulations were promulgated under and appear to be referable to section 241 of the Labor Law. Consequently, under the rule expressed in *Komar* v. *Dun & Bradstreet Co.* (284 App. Div. 538, especially 542–543) liability may be imposed on the owner although the work was being done by an independent contractor. Unlike the scaffolds involved in the *Komar* case, the shaftway here is not one of the appliances or conditions expressly listed in section 240 of the Labor Law. Therefore, the regulations adopted by the Board of Standards and Appeals concerning shaftways may not be subsumed under that section, but must be related to section 241.

On the other hand, I quite agree that the air shaftway in this case is not an "elevator shaftway" or a "hatchway" within the meaning of section 241-a of the Labor Law. If the air shaftway were covered by that section, the section would, as contended by plaintiff, impose liability on the owner in the event of violation (*Bobbey* v. *Turner Constr. Co.*, 283 App. Div. 939, affd. 308 N. Y. 890).

The case may not be disposed of on the ground that the accident arose from a hazard created by the nature of the work itself, because the regulations relate and provide alternative safeguards even as to work in progress in shafts. The alterna-

tives are provided to accommodate to the variant conditions created by the work.

BOTEIN, P. J., VALENTE and STEVENS, JJ., concur with McNALLY, J.; BREITEL, J., dissents and votes to affirm in opinion.

Order, entered on July 18, 1960, so far as appealed from, reversed, on the law. The facts have been reviewed and the finding of excessiveness is affirmed. The complaint is dismissed, with costs to defendant-appellant. The cross complaint is dismissed, without costs. Settle order on notice.