Darwin W. Telesford, J.
This action is brought to recover damages for the wrongful death of plaintiff’s intestate while he was engaged in working as a carpenter’s helper in a building under construction. Plaintiff sues the general contractor, which brings an action over against the subcontractor, the deceased’s employer.
Philip, D’Amato, a carpenter and fellow worker of the deceased, Prank Salerno, was the sole witness to testify as to the facts of the accident. He described the building as a structure of six stories and a roof. At the time of the accident, the outside walls had not been erected. Concrete had been poured on the lower three or four floors and decks laid for the pouring of concrete on the remaining floors, except the roof. Salerno was at work laying the deck on the roof. His task was to place sheets of plywood between the floor beams and fasten them thereon with K-clip. D’Amato cut the plywood on the sixth floor and passed it up to Salerno on the roof, through the opening between the beams which Salerno was in the process of covering. The witness testified that he saw the deceased about six or eight feet from the side of the building, laying plywood, that he saw him fall to the sixth floor and then fall over the side of the building. The deceased struck the ground about three feet from the edge of the building.
Plaintiff relies upon subdivision 6 of section 241 of the Labor Law, and section 23-3.9 of rule 23 of the Industrial Code, as in effect in 1958 when the accident occurred. Subdivision 6 confers *779 on the Board of Standards and Appeals authority to “ make rules to provide for the protection of workmen in connection with * * * the work of constructing * * * buildings and structures * * * and the owners and contractors for such work shall comply therewith.” The above-cited rule of the Industrial Code provided: ‘ ‘ Falling hazard. Every opening or place into which a person may fall shall be provided with a safety railing as specified in rule 23-3.24 or shall be otherwise effectively protected. Where such protection cannot be provided, life nets or approved safety belts with lifelines attached shall be furnished for and used by the workmen unless otherwise determined by the Commissioner.” (N. Y. Off. Comp, of Codes, Rules & Regulations [7th Supp.], p. 392.)
Section 241 places upon the owner and general contractor the duty of planking over the “ wide and open spaces ” in the floor of each story as the building progresses and of inclosing the shaftways on each floor with fencing or barriers. The statute applies generally to the expansive open spaces necessarily created at each story by the erection of the framework of the building before the floors are laid. It is reasonable to conclude that the Legislature intended that owners and general contractors should be required to provide safeguards for the protection of men working over openings in the general area embracing the entire floors throughout the building. It is also a logical conclusion that in the less expansive areas where the subcontractors perform their part of the work, the Legislature intended that" they, and not the general contractor, should be responsible for the protection of their workmen. In holding the subcontractors to their obligation, a different approach has been adopted than that used in section 241 for owners and contractors. Section 240 requires the employer-subcontractors to furnish specified devices such as scaffolds, hoists, stays, ladders, slings, etc., in their operations. The same method is applied in rule 23-3.9 of the Industrial Code, which requires the furnishing of work “ devices which bear a close relationship to the actual performance of the subcontractor’s job.” (See Conte v. Large Scale Development Corp., 10 N Y 2d 20, 29.) There is no indication that the Board of Standards and Appeals intended rule 23-3.9 to be connected with or an appendage to section 241. It contains no statement to that effect nor does it per se place upon the owners or general contractors the burden of supplying the required devices. However, the rule does specify devices, and these devices are normally used in relation to work done by a subcontractor. The Board of Standards and Appeals may not impose upon the owner or general contractor a duty which, as shown by the rule itself *780 and the circumstances under which the work is done, is primarily the subcontractor’s responsibility.
‘ ‘ The difference between section 240 and 241 in respect to the duty of compliance is readily understandable as to the specific safety measures referred to in the two sections. It becomes confusing only with respect to the rules adopted by the board. The immediate employer directing the performance of the work is the one who would reasonably be expected to furnish devices such as scaffolds, ladders, hooks, pulleys, ropes, etc. These devices normally have close relationship to the performance and progress of the work. It could hardly be expected that an owner not directing another in the performance of the work would know what devices would be required on the job, nor the time when they would be needed. On the other hand, the covering of floors and guarding of shaft openings specifically provided for in section 241 are quite as normally a matter for one in general charge of the job as a whole. The duty of safeguarding such openings is akin to the duty of safeguarding common walks and ways, a. task usually imposed by law on the general contractor and owner.” (Komar v. Dun & Bradstreet Co., 284 App. Div. 538, 542-543.) Although rule 23-3.9 deals with openings, it appears to apply to situations where the “ devices normally have close relationship to the performance and progress of the work ’ ’, and not to the larger area in which the general contractor is “ in general charge of the job as a whole ”.
Here, the work being done was work in progress in and around the opening through which Salerno fell. The general contractor was not directing or supervising the job. It was under the control and direction of the subcontractor, who alone would know ■what devices were needed or practical in its performance.
The uncontradicted proof establishes that the work could not have been performed if any of the safeguards required by rule 23-3.9 had been used. Nor could the hole through which the deceased fell have been covered during the progress of the work. Under these circumstances, there was no violation of a statutory duty on the part of either the general contractor or the subcontractor (Giorlando v. Stuyvesant Town Corp., 4 A D 2d 701). Bailings would have deprived Salerno of access to the opening, nets would have prevented the passing of the plywood through the opening, and life belts would have impeded his movements to a prohibitive degree, and other methods would have been equally impracticable. In the course of construction of a building, there are many hazards encountered by workmen which cannot be eliminated by statutory safeguards. Dangerous conditions, resulting from “ work in progress ” are created. The duty of *781 the general contractor to provide and maintain a safe place to work ‘ ‘ does not extend to a situation ‘ where the prosecution of the work itself makes the place and creates the danger ’ (Mullin v. Genesee County Elec. Light, Power 3 Gas Co., 202 N. Y. 275, 279) ” (Employers Mut. Ins. Co. v. Di Cesare & Monaco, 9 A D 2d 379, 383-384). The conditions under which Salerno worked were obviously unsafe. He could not attach the plywood to the floor beams unless he leaned over the opening. He was compelled to accept the hazards in order to get the work done. Under these circumstances, the general contractor could not be held liable for not furnishing him with a safe place to work.
The fall of the deceased through the open space between the beams started an unbroken chain of events resulting from that initial event: the striking of his body on the plywood sheets covering the sixth floor and then ‘1 hurtling ’ ’ over the side of the building due to the impact. There is no statute providing for safeguards such as barriers, nets, scaffolds or other devices to protect anyone from such an occurrence, under the circumstances. It may be that the Legislature never enacted any statute covering such an eventuality because it was thought impracticable to extend nets or place barriers at each story around the entire structure as the building progressed. However, whatever the reason may be, the wisdom of so providing is for the Legislature and not the courts.
In this unusual and unfortunate accident, the court finds that the general contractor was not actively or passively negligent and that there was no violation of sections 200, 240 or 241 of the Labor Law on its part.
Accordingly, judgment is rendered in favor of the defendant (third-party plaintiff), against the plaintiff, and likewise in favor of the third-party defendant against the third-party plaintiff, dismissing the respective complaints on the merits.