Charles J. Beckinella, J.
After all parties rested in the trial of this action, this court (1) directed a verdict in favor of the two defendants dismissing the complaint and, (2) directed a verdict in favor of the third-party defendant, dismissing the third-party complaint.
In the course of making the above dispositions this court orally, at length, stated its reasons for its conclusion that there was no question for the jury as a matter of law. The court quoted at length from cases that are dispositive of this action and explained its conclusion that under the authorities the defendants owed no duty to the plaintiffs, and that the third-party defendant was not liable to the third-party plaintiff. In spite of the court’s explanation, one of the attorneys for the plaintiffs, the attorney who drafted plaintiff’s legal memoranda, put a question to the court that seems to indicate that the bases for the court’s rulings escaped plaintiffs’ counsel. This memorandum states again the legal bases for the court’s rulings.
The action arises out of an accident which happened during the course of the construction of buildings in Brooklyn,. Piles had to be driven into the ground upon which the buildings were to be erected, so the owner, who was the general contractor as well, engaged Pile Foundation Construction Co., Inc. to drive the piles into the ground.
During the course of the pile-driving operation a chain broke, causing a pile to fall upon three men, each of whom was an employee of Pile Foundation Construction Co., Inc. The chain that broke indisputably was an integral part of the pile-driving operation. It was used to lift piles into position to be hammered into the ground. It was brought to the construction job by the corporation that drove the piles, and was under that subcontractor’s control at all times. Prior to a pile being lifted into position to be driven into the ground the chain was coiled around the pile by the employees of the pile-driving subcontractor.
When, during the course of a pile being lifted into position, the chain broke and the pile fell upon the three employees of the subcontractor who owned, controlled and operated the equipment, one of the men was killed instantly, one of them never went back to work before he died, and the third alleges serious disabilities to this day.
This lawsuit followed the accident. The administratrices of the two deceased men and the third injured man sued Reyna Construction Co., Inc., who was the owner and general con *994 tractor, and Joseph Saravis, who was a professional engineer hired by the owner, pursuant to subdivision 1 of section C26405.1 of the Administrative Code of City of New York, “to insure and certify that piles are installed in accordance with design and code, requirements. ’ ’
There was a third-party action by Reyna Construction Co., Inc., the owner and general contractor, against Pile Foundation Construction Co., Inc., the pile-driving subcontractor, who was the employer of the three injured men.
First to be considered is the suit against Reyna Construction Co., Inc., the owner and general contractor. This defendant is not liable to the plaintiffs for the injuries suffered by the men hit by the falling pile for the reason that this defendant breached no duty, common-law or statutory, which it owed the stricken men. As for a possible duty under the common law, principles stated in the frequently cited case of Iacono v. Frank & Frank Contr. Co. (259 N. Y. 377) are controlling. In that case the Court of Appeals held that the duty of inspecting and keeping safe apparatus and machinery supplied to laborers by subcontractors employing them is not to be cast upon a superintending owner and general contractor. Said the court (p. 382): “ The imposition of such a burden finds justification neither in principle nor authority.” See Zucchelli v. City Constr. Co. (4 N Y 2d 52, 56) where the court reaffirms the holding in the Iacono case (supra) stating that the ease held “ that the owner’s obligation to furnish to a contractor’s employees a safe place to work does not make the owner responsible to those employees for the sufficiency of the contractor’s own plant, tools and methods.”
In Chaney v. New York City Tr. Auth. (12 A D 2d 61, 66, affd. 10 N Y 2d 871) it is stated: “ It has been repeatedly held that the owner is not obligated as a part of the duty to furnish a safe place to work to supervise, in the interest of the employees of the subcontractor, the latter’s plant and appliances in the prosecution of the work or its details (Zucchelli v. City Constr. Co., 4 N Y 2d 52, 56).” See, also, Gambella v. Johnson & Sons (285 App. Div. 580, 582-583) where it is stated: “ A general contractor is not obliged to protect employees of his subcontractors against the negligence of their employers (Broderick v. Cauldlwell-Wingate Co., 301 N. Y. 182, 187, supra). A general contractor has no duty to inspect machinery and tools furnished by a subcontractor to the latter’s employees, nor has the general contractor any duty to repair a defective appliance of a subcontractor (Iacono v. Frank & Frank Contr. Co., 259 N. Y. 377, 381, supra).”
*995 Parenthetically, it is observed at this point that the court can find no authority for the statement at page 24 of plaintiffs ’ brief which contends: “ The common law rules found in the ease if [sic] Iacono v. Frank & Frank, 259 N. Y. 377, which will be discussed in detail later, have all yielded to a more complicated civilization.”
Passing on to a possible duty imposed upon defendant Reyna Construction Co., Inc., by a statute, only sections 200, 240 and 241 of the Labor Law need be considered. Section 200 “ is a codification of the common-law rule.” (Zinsenheim v. Congregation Beth David, 10 A D 2d 501, 502.) As noted above, the common-law duty to furnish a safe place to work did not put upon this defendant a duty to inspect and keep safe the apparatus and machinery of the employers of the injured men.
Section 240 imposed no duty on the owner and general contractor. See Iacono v. Frank & Frank Contr. Co. (259 N. Y. 377, 382, supra) where it is stated: “ Nor do we think that section 240 of the Labor Law (Cons. Laws, ch. 31) has application. That section reads in part: ‘ A person employing or directing another to perform labor of any kind in the erection * * * of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, * * * hoists * * * and other mechanical contrivances which shall be so constructed, placed and operated so as to give proper protection to a person so employed or directed. ’ Concededly, neither defendant was a person ‘ employing ’ another ‘ to perform labor, ’ for neither had any workman upon the job. Nor do we think that the Legislature, in using the phrase * a person * * * directing another to perform labor, ’ had in mind an owner performing work through an independent contractor, or that it intended to impose liability upon such an owner for injuries arising from defective appliances supplied to his laborers by an independent contractor, as though the owner were a person ‘ directing ’ such laborers. Therefore, we think that the statute has no application.”
Section 241 of the Labor Law, as of the day the pile fell, contained six subdivisions. The section began: 1 ‘ All contractors and owners, when constructing or demolishing buildings or doing any excavating in connection therewith, shall comply with following requirements: ’ ’ The first five subdivisions required (1) flooring or filling to be completed as the building progressed; (2) underflooring to be laid; (3) floors to be planked over; (4) tiers of beams to be planked ones; (5) shafts to be enclosed or fenced in, and guarded by an adjustable barrier.
*996 It was not contended that any of the first five subdivisions of section 241 was violated. Subdivision 6 provides: “ The board of standards and appeals may make rules to provide for the protection of workmen in connection with the excavation work for the construction of buildings, the work of constructing or demolishing buildings and structures, and the guarding of dangerous machinery used in connection therewith, and the owners and contractors for such work shall comply therewith.” (Subd. 6, formerly subd. 7, was renumbered by ch. 683 of L. of 1947. In the same act, former subd. 6 was repealed.)
It was contended that a rule of the Board of Standards and Appeals was adopted pursuant to this subdivision, was binding on the defendant owner and general contractor and accordingly made that defendant liable to the injured man. That rule was rule “ 23-43. Pile Drivers ” [now 12 NYCRR 23.53] and the apposite part of the rule, as far as this litigation goes, provides: ‘ ‘ All pile driving equipment shall be inspected daily before the start of work and every defect shall be immediately corrected before beginning operations.” Plaintiffs contend this rule placed a duty upon the owner and general contractor to inspect and that its failure to inspect and become cognizant of a defect in the chain made the owner and general contractor liable to the plaintiffs.
In the recent case of Conte v. Large Scale Development Corp. (10 N Y 2d 20) the Court of Appeals stated the criteria that determine whether a rule of the Board of Standards and Appeals is binding upon an owner and general contractor through the force of section 241 of the Labor Law. In that case, an employee of a subcontractor was injured severely when a natural earth roadway sloping down from a sidewalk into an area being excavated gave way under the weight of a tractor-type machine the injured man was operating. The Court of Appeals held that the owner and the general contractor were bound to comply with a rule of the Board of Standards and Appeals which required all runways and ramps to be substantially constructed and securely braced and supported.
In the course of its opinion, the court stated (pp. 28-29): “ a consideration of the differences in the employer’s liability under section 240 and that of owner and general contractor under section 241 makes it clear that the roadway in question was not a work facility of a subcontractor but a protective guard for workmen in situations covered by section 241 where open spaces between floors or stories create hazardous conditions. We explored these differences in Thomas v. City of New York (9 N Y 2d 625), which involved an employer’s failure to supply a ‘ stay ’ *997 as required by section 240. The latter section places upon the employer-subcontractor the burden of furnishing work devices such as ‘ scaffolds ’ and ‘ stays ’ — devices which bear a close relation to the actual performance of the subcontractor’s job. Section 241, on the other hand, deals with far more wide and open areas of protection, its first five subdivisions being concerned with the duty of safeguarding openings in floors and shaftways and the planking over of open spaces, a duty similar to that of protecting common walks and ways which is ordinarily imposed upon the owner and general contractor. When, therefore, section 241 additionally requires owners and general contractors to comply with rules of the board for the protection of workmen, it is reasonable to conclude that the Legislature intended them to comply with any rules which involve the protection of employees working in open areas between floors or stories.”
The import of this excerpt from the opinion in the Conte case, is that the rules of the Board of Standards and Appeals referred to in subdivision 6 of section 241, with which owners and general contractors must comply, are those rules which are equivalent to the first five subdivisions of section 241. The condition sought to be coped with is to be equivalent to the conditions coped with under subdivisions 1 to 5 of section 241, and the remedy proposed for the condition is to be equivalent to the remedies stated in subdivisions 1 to 5 of section 241.
The court then went on to distinguish between those rules applying to construction work “with which those in general charge of operations might properly be expected to comply ’ ’ and the immediate details of the job, whose safe construction ‘ ‘ is rightly made ’ ’ the responsibility of the subcontractor. The court said that an attempt by an owner or general contractor to supervise the subcontractor’s “work facilities” relating to such immediate details of the job, ‘1 would result in a division of authority between the subcontractor and his superiors in an area of his particular competence which would be likely to cause confusion or unreasonably impede the progress of the job.”
The clear import of this language is that an owner and general contractor bears no responsibility for a subcontractor’s “ work facilities ” which have to do with the immediate details of a construction job. The pile-driving equipment used in the instant actions is just such a subcontractor’s work facility. One of the definitions of the word facility is “ 4. A thing that promotes the ease of any action, operation, or course of conduct; — usually in pi.; as facilities for study.” (Webster’s Collegiate Dictionary [5th ed., 1944], p. 358.)
*998 It is difficult to think of any equipment used in the construction industry more within an area of the “ particular competence ” of a subcontractor than pile-driving equipment. As was noted above, there are certain aspects of driving piles that are of such critical importance that they require supervision by “ a competent licensed professional engineer or competent licensed architect ” who shall be maintained on the site. (Administrative Code of City of New York, § C26-405.1, subd. 1.)
The Court of Appeals made it clear that rules of the Board of Standards and Appeals which relate to the immediate details of a subcontractor’s job are the subcontractor’s responsibility. “ Were an owner or general contractor to attempt to supervise such work facilities, it would result in a division of authority between the subcontractor and his superiors in an area of his particular competence which would be likely to cause confusion or unreasonably impede the progress of the job.” (Conte v. Large Scale Development Corp., 10 N Y 2d 20, 29, supra.) This same view had been stated previously in Komar v. Dun & Bradstreet Co. (284 App. Div. 538, 546): “ Furthermore it could only create confusion if responsibility for devices such as scaffolds, ladders, blocks, pulley ropes, etc., were to be divided and placed on several heads. As contrasted with making a floor opening safe or guarding a shaftway, the latter tasks could readily be placed on several heads without causing interference with the work. ’ ’
These two statements acknowledge that there may be aspects of construction work as to which owners and general contractors are uninformed and as to which aspects of the work their judgment is inferior to the judgment of the subcontractor. The import of the Conte case is that when Rules of the Board of Standards and Appeals are directed toward areas of construction activity which call for specialized competence, they are not meant to apply to owners and general contractors. On the other hand it does not require any particular competence in the construction industry to conclude that a workman is safer if the floor under the one he is working on is planked over; that a ramp supporting heavy equipment is safer if it is braced; that a workman Avorking in a trench is safer if the trench is shored up. No owner, however, uninformed, could not be aware of these facts find Rules of the Board of Standards and Appeals which relate to such matters as Avell as subdivisions 1 to 5 of section 241 apply to OAAmers and general contractors.
We need go no further than the instant case for proof that some phases of construction work require supervision of the highest order. As noted above, subdivision 1 of section 026- *999 405.1, of the Administrative Code of City of New York requires an owner to maintain ‘ ‘ a competent licensed professional engineer or competent licensed architect ’ ’ on the pile-driving site to insure and certify that piles are installed in accordance with design and code requirements. Joint responsibility for the inspection and maintenance of equipment as specialized as pile-driving equipment would inevitably “ cause confusion or unreasonably impede the progress of the job.” It would also put an owner and general contractor in the following predicament. Needing piles to be driven, he engages a specialist in the pile-driving trade. Still the owner and general contractor remains responsible for the inspection and maintenance of the specialist’s equipment. Since he knows nothing about the equipment, he hires a second specialist to check up on the first specialist. Then the specialists disagree between themselves. Is the uninformed owner and general contractor to resolve the dispute? Or is he required to hire a third specialist?
At this point a digression is in order to take up the case of Catapano v. Impressive Homes (19 A D 2d 532 [2d Dept.]). Plaintiffs relied very heavily upon this case and their counsel seemed to be of the opinion that this court’s disposition of the instant action simply cannot be squared with that decision.
In the Gatapano case a laborer employed by a subcontractor was killed while working on the bottom of a trench when the side of the trench caved in and buried him alive. The Appellate Division held that Impressive Homes, Inc., the owner and general contractor, was required to comply with a rule of the Board of Standards and Appeals which provided for the shoring and bracing of the trench excavation.
The Appellate Division stated (p. 533): “ Under the applicable aiithorities, although Impressive was exercising no active control over Milford’s work [Milford was the subcontractor who employed the deceased laborer and excavated the trench], it nevertheless was an owner or general contractor within the purview of section 241 and the rules mentioned (Conte v. Large Scale Development Corp.) 10 N Y 2d 20; Mitchell v. State of New York, 14 A D 2d 478). This being so, the issue of the negligence of Impressive, as well as the issue of the decedent’s contributory negligence, if any, should have been presented to the jury (Conte v. Large Scale Development Corp., supra).”
It will be seen from the facts recited above and the quoted excerpt from the Appellate Division’s opinion that in the Gatapano case there existed circumstances which brought the case squarely within the following language in the Conte case. The Court of Appeals said in the Conte case (supra, pp. 28-29): *1000 “ When, therefore, section 241 additionally requires owners and general contractors to comply with rules of the board for the protection of workmen, it is reasonable to conclude that the Legislature intended them to comply with any rules which involve the protection of employees working in open areas between floors or stories.”
The rules before the court in the Catapano case required inter alla, sheet piling or shoring and all bracing as may be necessary to prevent injury to any employee in trench excavations five feet or more in depth (rule 23-11.2, now 12 NYCRR 23.8 [lb]); the sides of open excavations five feet or more in depth to be securely braced (rule 23-11.3, now 12 NYCRR 23.8 [c]); in every excavation there shall be provided at all times, ladders, stairways or ramps to furnish safe access to and egress from such excavation. (Rule 23-11.4, now 12 NYCRR 23.8 [d].) These rules obviously were intended for the protection of the men who had to go into the trenches. They were rules ‘ ‘ which involve the protection of employees working in open areas between floors or stories.” The shoring and bracing of the trenches in the Catapano case were the exact counterpart of the supports, braces and curbs required in the Conte case.
The Appellate Division in the Catapano case applied to the very analogous facts of that case, the principles set down in the Conte case. The holding in the Catapano case has no application to the facts of the instant case.
The other defendant in the action is Joseph Saravis, hired by the owner and general contractor, pursuant to the Administrative Code, to insure that the piles were driven into the ground in accordance with design and code requirements. This defendant breached no duty, common-law or statutory, which he owed the stricken man. Under no principle of the common law that this court is aware of was the defendant Saravis required to inspect the equipment of the pile-driving subcontractor. There was no proof adduced at the trial which even suggested that this defendant had any authority of any kind to inspect the pile-driving equipment on the construction site.
As for any statutory duty imposed upon Saravis, there is none. This defendant was neither owner nor contractor within the scope of section 241. The “contractor” contemplated by this section is the general contractor (Conte v. Large Scale Development Corp., supra, pp. 28-29). Section 240 has no application to the facts of this case.
The third-party complaint of Reyna Construction Co., Inc., against Pile Foundation Co., Inc., was dismissed. If Reyna Construction Co., Inc., is not liable to the three plaintiffs, it *1001 cannot recover over against the third-party defendant. In any event Beyna could not recover from the third-party defendant if its liability to the plaintiffs was based upon the breach of a duty it owed plaintiffs pursuant to subdivision 6 of section 241. By such a breach, Beyna “ would have to be held [an active tortfeasor] who breached a 1 nondelegable duty ’ and, in consequence, would not be entitled to recovery over.” (Conte v. Large Scale Development Corp., supra, p. 30.)