Harry B. Frank, J.
This is an action for personal injuries brought against the general contractor of a building under construction, by the employee of a subcontractor engaged thereon. At the conclusion of the plaintiff’s case, which was directed solely to the question of liability, both sides rested and, by stipulation of the parties, a jury was waived and the issue of liability was submitted to the court for determination upon the evidence presented and the contractual exhibits.
The record indicates that defendant Diesel Construction Co., Inc. undertook to serve as general contractor for the construction of a multiple-story building at 48th Street and Eighth Avenue in New York City by a contract dated July 5, 1961 with the owners of said property and that subsequently thereto, under a written agreement executed in March, 1962 Diesel subcontracted the concrete superstructure work on the building to Die Concrete Corporation. Plaintiff Skibicki was employed by Die as a laborer and had been working in such capacity on this job for some five to six weeks prior to the date of the accident. His duties included the picking up and carrying of wood and piling, the spreading of concrete when the floors were being poured, the unloading of new materials and various other general laboring functions.
By May 21, 1962, the first three stories of the building under construction had already been completed. On that day plaintiff was engaged on the fourth floor where his employer’s work was then in progress until about 2:30 p.m., at which time he was instructed to accompany his foreman to the second floor. Upon reaching such floor, the foreman pointed to “ a big pile of wood, all different kinds ”, which included large pieces of plywood, and told the plaintiff to “ pick it up ”. Plaintiff then proceeded to remove pieces of wood from the pile and to separate them *957 by stacking reusable lumber in one area and disposing of the waste or firewood. After continuing on in this manner for some time, plaintiff reached a large piece of plywood which lay at the bottom of the now diminished original pile and began to lift it up. In the course of doing so, he fell through an opening in the floor which had been covered by such plywood and dropped a distance of approximately 16 feet to the concrete floor of the story below, sustaining the injuries for which a recovery is sought in this action.
It is uncontradicted that there were no signs, barricades, or any other warnings on the second floor in the area of the hole involved, described as approximately four by six feet in size, which the parties agree was an opening for a vent to the kitchen called a kitchen duct exhaust. There is, moreover, nothing in the record to indicate who placed the piece of plywood over the opening, when it was so placed, or for how long it had been in such position, and the conclusory imputations as to any such facts which appear in defendant’s brief are purely speculative and without any evidentiary basis. The record likewise fails to sustain the further declaration in defendant’s brief that the floor involved continued to be a work space of the plaintiff’s employer. Defendant having chosen to rest at the end of plaintiff’s case, it is bound by the uncontradicted evidence which shows that both the second and third floors had already been poured and completed by plaintiff’s employer some weeks prior to the date of the accident and that on such date the concrete work covered by the contract was in progress on the fourth floor of the building, some two stories above the completed floor where the offending hole was located. It is also significant that the contract between defendant and Die, the concrete subcontractor, contemplated that masons and other contractors would be carrying on their work " within two stories of the floor being poured ”, which further demonstrates the speciousness of defendant’s unsupported contention that Die still retained control of the second floor.
Plaintiff’s charge of negligence against the defendant Diesel is predicated upon an alleged violation of a statutory duty set forth in the rules promulgated by the Board of Standards and Appeals of the State Labor Department which were in effect on the date of the accident. The particular regulation primarily relied upon is section 23-3 (i) of the State Industrial Code, which provided as follows: “Falling hazards. Every hole into or through which a person may fall shall be guarded by a barrier sufficient to prevent falls, except where free access is required by work actually in progress. ” (12 NYCRR 23.3 [i].)
*958 Expert testimony regarding the proper and sufficient manner of guarding a hole of this type was given hy the Chief Construction Safety Inspector of the Bureau of Construction of the New York State Department of Labor, Mr. Joseph Alieva, who on the date of the accident was the Supervising Construction Safety Inspector in Manhattan and The Bronx charged with directing the functions of said bureau pertaining to safety and the enforcement of New York State Labor Law and Industrial Code rules. Mr. Alieva testified that proper coverage of a hole of the type here in question required either solid planking-over with 2-by-9 planking, that is, planks 2 inches thick, 9 inches wide and 13 feet long, or alternatively a covering of plywood of at least % of an inch in thickness if the plywood were secured with cleats on the underside. He emphasized the necessity of having a plywood covering secured by cleats and explained that such cleats serve the purpose of preventing-anyone from inadvertently picking up the wood and exposing the opening underneath and also serve to prevent the plywood from sliding and exposing the opening in that manner. Mr. Alieva further testified that in the absence of cleats the plywood covering in this case did not constitute proper coverage of the opening involved.
The record leaves little doubt that the hole through which plaintiff fell was not properly or sufficiently guarded as required by rule 23-3 (i). While such rule provides for an exception to compliance in the event that free access to the hole is required “by work actually in progress ” (cf., e.g., Gloriando v. Stuyvesant Town Corp., 4 A D 2d 701), such exception is wholly without relevance to the facts here present and indeed defendant has not even sought to raise such issue. Accordingly, the court finds that plaintiff has clearly established the violation of rule 23-3 (i) of the Industrial Code in connection with the hole through which plaintiff fell.
The crucial issue in the instant case, however, is not so much whether the particular rule was violated but rather whether or not such violation may be charged against this defendant, Diesel, the general contractor on the job. It is Diesel’s position that it had no responsibility whatsoever for carrying out such regulation but that such obligation rested solely upon plaintiff’s own employer, Die, the concrete subcontractor. Plaintiff, on the other hand, contends that the rule in question was enacted pursuant to the authority of section 241 of the Labor Law which imposed the duty of compliance upon the general contractor and that Diesel must answer for the failure to do so.
*959 In May 1962, section 241 of the Labor Law provided as follows:
“ § 241. Protection of employees on building construction or demolition work including excavation work in connection therewith. * * *
“ 6. The board of standards and appeals may make rules to provide for the protection of workmen in connection with the excavation work for the construction of buildings, the work of constructing or demolishing buildings and structures, and the guarding of dangerous machinery used in connection therewith, and the owners and contractors for such work shall comply therewith. ”
While the grant of the rule-making power in section 241 is coupled with a specific direction that all owners and contractors shall comply therewith, not every rule enacted by the board may be presumed to have been promulgated under that particular section since various other sections of the Labor Law similarly authorize the adoption of rules by the board. Moreover, such rules must be evaluated in light of the respective obligations for the protection of workmen which are expressly imposed upon immediate employers, on the one hand, and owners and contractors, on the other, by the pertinent legislative enactments relating thereto, particularly sections 240 and 241 of the Labor Law, and the rules of the board must be carried out in consonance with such statutory expressions. Thus, where an obligation imposed by a rule of the board relates to or implements some duty which has already been placed upon the immediate employer by statute, as for example the furnishing of scaffolds or other work devices under section 240, fulfillment of the policy expressly set by such statute mandates that the further board-enunciated obligation likewise be discharged by the employer and not the general contractor, notwithstanding that section 240, unlike 241, grants no rule-making power to the board. (See Komar v. Dun & Bradstreet Co., 284 App. Div. 538; Conte v. Large Scale Development Corp., 10 N Y 2d 20; Naso v. Wates & Co., 21 A D 2d 679.)
Defendant seeks to similarly construe the instant obligation under rule 23-3(i) with respect to the guarding of the hole in question, although it can point to no statutory provision, under section 240 or otherwise, which would warrant the imposition of such obligation upon the subcontractor-employer. A review of the pertinent authorities, moreover, demonstrates quite to the contrary that the duty of safeguarding an opening in a floor such as is here involved rests clearly upon the general contractor.
*960 The case of Komar v. Bun & Bradstreet Co. (supra) is of particular significance on the issue of who is responsible for compliance with the various rules and regulations enacted by the Board of Standards and Appeals. The majority opinion therein clearly delineates the salient distinguishing features which are crucial in determining whether responsibility for compliance with a particular rule-defined obligation falls upon the immediate employer or upon the general contractor. In that regard attention is directed to the specific duties imposed upon each of them by sections 240 and 241 and the distinctive characters of their respective obligations thereunder. In examining these differences it is noted that (pp. 542-543): “ The immediate employer directing the performance of the work is the one who would reasonably be expected to furnish devices such as scaffolds, ladders, hooks, pulleys, ropes, etc. These devices normally have close relationship to the performance and progress of the work. * * * On the other hand, the covering of floors and guarding of shaft openings specifically provided for in section 241 are quite as normally a matter for the one in general charge of the job as a whole. The duty of safeguarding such openings is akin to the duty of safeguarding common walks and ways, a task usually imposed by law on the general contractor and owner. ” (Emphasis supplied.)
While emphasizing that rules of the board may not alter or create conflict with a statute and must, therefore, insofar as they relate to devices mentioned in section 240 defer to the expressed legislative direction therein that such be furnished by the employer, it is made equally clear by the court that rules relating to the “ guarding of floor openings and shaftways ” come within the purview of section 241 and that the duty of complying with such rules is upon owners and general contractors as specified by such section. It is specifically pointed out in the majority opinion that its finding imposing responsibility upon the immediate employer for the particular rule there in question resulted “ because it relates to a device mentioned in 240”, and an admonition is extended that, dehors such specified devices, owners and general contractors are not exempted generally from rules made under section 241.
The distinctions drawn in the Komar case were adopted in Thomas v. New York City Housing Auth. (8 A D 2d 789, affd. without opn. 9 N Y 2d 625) which in turn was heavily relied upon by the majority in Conte v. Large Scale Development Corp. (10 N Y 2d 20, supra).
In the Conte case the Court of Appeals reiterated the determinative differences between the immediate employer’s obliga *961 tions under section 240 and the duties imposed upon owners and general contractors by section 241, as follows (p. 28): “ The latter section [240] places upon the employer-subcontractor the burden of furnishing work devices such as ‘ scaffolds ’ and ‘ stays ’ — devices which bear a close relation, to the actual performance of the subcontractor’s job. Section 241, on the other hand, deals with far more wide and open areas of protection, its first five subdivisions being concerned with the duty of safeguarding openings in floors and shaftways and the planking over of open spaces, a duty similar to that of protecting common walks and ways which is ordinarily imposed upon the owner and general contractor. ”
In considering the extent to which the general contractor’s liability under section 241 might be affected by the various rules promulgated by the Board of Standards and Appeals, the court concluded that (pp. 28-29): “When, therefore, section 241 additionally requires owners and general contractors to comply with rules of the board for the protection of workmen, it is reasonable to conclude that the Legislature intended them to comply with any rules which involved the protection of employees working in open areas between floors or stories.”
The import of this conclusion is emphasized by the specific determination in the Conte case that both the owner and general contractor were obliged to comply with the particular rule concerning safety measures for runways and ramps which was there in issue, because ‘ ‘ the roadway in question was not a work facility of a subcontractor but a protective guard for workmen in situations covered by section 241 where open spaces between floors or stories create hazardous conditions.” (p. 28; emphasis supplied.)
That the foregoing characterization of situations covered by section 241 and the rules promulgated thereunder encompasses the floor opening in this case which caused plaintiff’s injury would appear to be so clearly evident as to require no extended comment. Defendant, however, chooses to ignore the nature of the area involved and the statutory implications arising therefrom and asserts that it may not be charged with liability, by virtue of the decisions in Wright v. Belt Assoc. (14 N Y 2d 129); Naso v. Wates & Co. (21 A D 2d 679, affd. 15 N Y 2d 667) and Cangiano v. Lo Bosco & Son (23 A D 2d 860, affd. 18 N Y 2d 922). Defendant’s reliance on these authorities is misplaced and overlooks the fact that the general contractor was exonerated from liability in each of the specified cases because the particular rules involved related to some obligation which rested upon the employer by virtue of section 240 *962 and not, as in the instant situation, to an area of responsibility governed by secton 241. Those cases in no way departed from the principles enunciated in Komar and Conte and on the contrary specifically, and with appropriate citation, adopted and followed those principles. Whatever the particular result, it derived from a resolution of the crucial issue of whether the rule came within the ambit of a duty covered by section 240, which places upon the subcontractor-employer the burden of furnishing work devices which bear a close relation to the actual performance of the subcontractor’s job, or whether it involved the more wide and open areas of protection dealt with by section 241 which is concerned with ‘ ‘ the duty of safeguarding openings in floors and shaftways and the planking over of open spaces. ” Where the rule-imposed duty falls into the latter category, it must be discharged by owners and general contractors pursuant to the legislative mandate manifested in said statute. (See Nestor v. Consolidated Edison Co., 16 N Y 2d 1025; cf. Bergen v. East 84th St. Constr. Corp., 16 N Y 2d 644.)
Since the present case involves the safeguarding of an opening in a floor, an area of protection within the purview of section 241, the obligations in that regard imposed by rule 23-3(i) must be held to be the responsibility of the general contractor, defendant Diesel. To hold otherwise and apply the interpretation urged by defendant would serve to disrupt the carefully devised legislative scheme for the protection of workmen which is predicated upon a deliberate and intentional division of responsibility for safety measures between immediate employers on the one hand and owners and general contractors on the other. The astuteness of the legislative allocation of responsibility becomes particularly evident in this case upon consideration of the ramifications of placing the duty in question upon plaintiff’s employer, the concrete subcontractor. It would have imposed a continuing obligation upon such subcontractor to affirmatively safeguard openings in floors which it had already completed, over which it no longer exercised control and which were open to use by other subcontractors and third parties completely unrelated to it or the concrete work it had been hired to do. The responsibility for safeguarding such areas clearly belongs upon the one in general charge, the owner and/or general contractor, as the Legislature has wisely decreed.
Under the circumstances here present, the Court finds that Diesel’s failure to discharge the duty imposed by rule 23-3(i) constituted negligence on its part which was a proximate cause of the accident in which plaintiff was injured (cf. Nestor v. Consolidated Edison Co., supra).
*963 Since defendant’s negligence is predicated upon violation of a rule of the Industrial Code rather than a specific provision of section 241 itself, a finding of freedom from contributory negligence is an essential prerequisite to a recovery herein (see Conte v. Large Scale Development Corp., supra).
In light of the pressures upon plaintiff, as an employee, to follow the directions of his superiors (see Kaplan v. 48th Ave. Corp., 267 App. Div. 272; Broderick v. Cauldwell-Wingate Co., 301 N. Y. 182) and his right to assume that defendant would properly fulfill the duties upon it with respect to the protection of openings and the like, the court cannot fault the plaintiff’s conduct herein, particularly in view of the location of the culpable board under a movable pile of lumber, including other pieces of wood of similar type, with nothing to indicate that such particular board was covering a hole or opening or to otherwise make him aware of the danger (cf. Sarnoff v. Charles Schad, Inc., 49 Misc 2d 1059 and cases therein cited). While this was not a situation where the dangerous condition was open and obvious it may "be noted that recoveries in favor of workmen injured by reason of similar rule violations have been sustained even though the danger and lack of protection were in fact obvious (see Nestor v. Consolidated Edison Co., supra; Bergen v. East 84th St. Constr. Corp., supra).
In accordance with the foregoing findings, the Clerk is directed to enter judgment in favor of the plaintiff on the issue of liability.