ALFONSO VALLINA, Appellant, v. WRIGHT AND KREMERS, INC., Respondent.

Fourth Department, December 17, 1958.

102

*Clayton M. Smith* for appellant.

*Phelps, Gray, Mansour & Hewitt* (*Salem G. Mansour* of counsel), for respondent.

HALPERN, J. This is an appeal by the plaintiff from a judgment for the defendant entered upon a jury verdict of no cause of action.

In view of the narrow question of law upon which this appeal turns, there is no need to review the conflicting evidence in detail. It is sufficient for the purpose of this appeal to state the factual background of the problem briefly as follows: The defendant was engaged under a contract with the Hooker Electrochemical Company in construction work in a factory building owned by the latter. The contract required the defendant to remove the concrete foundation of certain steel pillars within

the factory building and to dig an excavation and lay a new foundation for a new pillar. The plaintiff was an employee of the Hooker Company. There was evidence from which it could be inferred that the plaintiff suffered injury when he fell into an unguarded excavation for which the defendant was responsible, while the plaintiff was lawfully upon the premises in the performance of his duties for the Hooker Company.

The principal question upon this appeal is whether the court erred in declining to charge the jury that it was the defendant's duty to comply with certain provisions of rule 23 of the Industrial Code adopted by the Board of Standards and Appeals. The trial court refused to submit the rules to the jury upon the ground that the rules had been adopted pursuant to section 241 of the Labor Law, that that section was not applicable to this case and that therefore the rules adopted pursuant to it were not applicable either.

Subdivision 6 of section 241 reads as follows: "The board of standards and appeals may make rules to provide for the protection of workmen in connection with the excavation work for the construction of buildings, the work of constructing or demolishing buildings and structures, and the guarding of dangerous machinery used in connection therewith, and the owners and contractors for such work shall comply therewith."

The trial court held that the quoted subdivision of section 241 applied only to the construction of an entire building or the demolition of an entire building and was therefore not applicable to this case. This ground of the court's decision is disavowed by the respondent upon this appeal; no effort is made by the respondent to support the view that subdivision 6 of section 241 does not authorize the adoption of rules dealing with the construction or demolition of part of a building or the remodeling, repair or alteration of an existing building.

The term "construction" is certainly broad enough to include the type of work the defendant was doing. The term is defined in rule 23-2.7 of the Industrial Code as follows: "'Construction' means the erection, alteration, reconstruction, renovation, repair or moving of a building or structure or part thereof including the installation of any equipment in connection with such work."

When a broad term like the word "construction" is used in a statute, the administration of which is entrusted to an administrative agency, the "administrative determination is to be accepted by the courts 'if it has * * * a reasonable basis in law'" (*Red Hook Cold Stor. Co.* v. *Department of Labor*, 295 N. Y. 1, 9).

It is true that the first five subdivisions of section 241, as originally enacted, dealt only with the erection of new multifloor buildings (*Lockhart* v. *Hoffman,* 197 N. Y. 331), but we are concerned here only with the sixth subdivision of section 241. There is no claim that any of the substantive provisions of the first five subdivisions have anything to do with this case. The grant of rule-making authority in subdivision 6 was added much later (L. 1932, ch. 470). This subdivision is not limited in its scope to the subject matter of the first five subdivisions (*Komar* v. *Dun & Bradstreet Co.,* 284 App. Div. 538, 543–544). It is our conclusion that subdivision 6 is broad enough to authorize the adoption of rules dealing with construction work consisting of repair and remodeling as well as with new construction.

As has been indicated, this is not seriously questioned by the respondent upon this appeal but the respondent maintains that any rules adopted pursuant to subdivision 6 of section 241 must be limited in their scope to the protection of construction workmen, that is, workmen engaged in the construction project itself, and that they cannot validly provide for the protection of any other workmen.

We need not decide in this case whether rules adopted solely under the authority of section 241 would be so limited in scope because it appears upon the face of rule 23 that it was not adopted solely under the authority of section 241 but was adopted under the authority of sections 28 and 200 of the Labor Law as well (N. Y. Off. Comp. of Codes, Rules & Regulations, Vol. 3, p. 651; see *Komar* v. *Dun & Bradstreet Co., supra,* p. 541).

Section 28 grants general rule-making power to the Board of Standards and Appeals to promulgate rules '' for guarding against and minimizing * * * personal injuries and diseases in all places to which this chapter applies with respect to: a. The construction, demolition, alteration, equipment and maintenance of all such places * * * It being the policy and intent of this chapter that all places to which it applies shall be so constructed, equipped, arranged, operated and conducted in all respects as to provide reasonable and adequate protection to the lives, health and safety of *all persons employed therein, and frequenting the same,* and that the board shall from time to time make such rules as will effectuate such policy and intent '' (italics supplied).

Section 200 of the Labor Law reads as follows: '' All places to which this chapter applies shall be so constructed, equipped, arranged, operated and conducted as to provide reasonable and adequate protection to the lives, health and safety of all persons

employed therein. The board shall make rules to carry into effect the provisions of this section.''

Rules adopted under these two sections could validly provide for the protection '' of all persons employed therein '', that is to say, all persons employed within the factory or other '' place '' to which the statute applied (Labor Law, §§ 28, 200). Furthermore, under the express provision of section 28, the rules could validly provide for the protection of all persons '' frequenting the same ''. The plaintiff was clearly within the class of persons for whose benefit rules could be adopted under sections 28 and 200. He was a workman employed in the factory building which was being altered or remodeled; he was obviously within the class described as persons '' frequenting '' the premises.

When we turn to the rules, we find that the authority conferred by sections 28 and 200 was utilized and rules were adopted for the protection of '' all employees '' and other persons '' frequenting the [construction] job ''. Rule 23–3.2 spells out the class of persons for whose protection the rules were designed, as follows: '' Every employer shall use every reasonable precaution to provide for the safety of all the employees and all persons frequenting the job, whether provided for in these rules or not, and it shall be the duty of such employer to carry out the provisions of these rules by providing the safety devices, types of construction, materials, methods and procedures required by these rules '' (N. Y. Off. Comp. of Codes, Rules & Regulations [7th Supp.], pp. 391–392).

This section of the rules was adopted as part of the revision in 1951 of rule 23 of the Industrial Code. The rule dealing with the same subject matter, as it appeared in the 1944 Industrial Code, rule No. 23 (N. Y. Off. Comp. of Codes, Rules & Regulations, Vol. 3, p. 651), read: '' 23–1.2.1. Responsibility of employer. Every person employing, or directing another to perform labor of any kind in the erection, alteration, repair, renovation or demolition of any building or structure, and any excavation in connection therewith, shall cause such operations to be so arranged, operated and conducted and shall furnish or erect or cause to be furnished or erected for the performance of such operations, such scaffolding, hoists, ladders, derricks and other equipment as to give proper protection to the lives, health and safety of all persons employed therein and frequenting the construction site, as herein provided.''

The rule was somewhat condensed in the 1951 revision but there was apparently no intent to change its meaning. The meaning is clearer in the original, somewhat fuller, text, in

imposing a duty upon all persons engaged in erection, alteration, repair, renovation or demolition work, to furnish or erect all safeguards " as herein provided ", i.e., in the rules, so " as to give proper protection to  *  *  *  all persons employed therein and frequenting the construction site ".

The respondent places reliance upon the provision of the initial section of rule 23 (rule 23–1) to the effect that " This rule shall apply to the protection of those employed in and in connection with all construction, demolition, and excavation as herein defined ".  But it is to be noted that the provision does not say that it shall apply *only* for the protection of construction employees.  It cannot reasonably be construed as limiting the scope of all the rules which follow it to the protection of the workmen directly employed on the construction project.  Such a narrow interpretation would be inconsistent with the explicit provision of rule 23–3.2 quoted above, which provides for the protection of " all persons frequenting the job ".  It would also be inconsistent with numerous other provisions of rule 23 obviously designed for the protection of persons other than the construction workers.  See, for example, rules 23–10.18 and 23–11.7 which are designed to protect members of the public who might be endangered in passing construction work which bordered upon a sidewalk or public way.  See, also, rule 23–10.19, subdivision (5), which is also plainly designed for the protection of the public, in requiring the erection of " Substantial barricades  *  *  *  to prevent persons other than workmen from entering the zone of demolition operations."

Furthermore, it should be noted that rule 23–1 refers not only to workmen employed " in " construction work but also to workmen employed " in connection with " the construction work.  The words " and in connection with " were inserted in the 1951 revision of rule 23–1.  If the benefit of the rule were limited to construction workers, as the respondent contends, the additional words would add nothing to the meaning of the rule and their insertion in the course of the revision of the rule would be pointless.  When read in connection with the other provisions of the rules, it is apparent that the inserted words were designed to harmonize rule 23–1 with the rest of the rules so that there could be no claim of inconsistency between rule 23–1 and the other rules which by their terms were applicable not only to the persons employed in the construction work itself but also to other persons foreseeably endangered while at or near the construction site.

In any event, rule 23–1 does not undertake to define the class of persons protected by the rules; it is merely an introductory

section, outlining the kind of work to which the rules are applicable, namely "construction, demolition, and excavation as herein defined". The scope of the class of persons protected by the rules is left for definition in rule 23–3.2, quoted above.

The definition in rule 23–3.2 carries out the "policy and intent" of section 28 of the Labor Law to protect, not only the workmen directly employed upon the work, but also all persons "frequenting the same".

It may be appropriate to note here that, if the words "in connection with" in subdivision 6 of section 241 are given the same liberal construction as that required for those words in rule 23–1 in the context of the rules, the granting of rule-making authority under subdivision 6 of section 241 is broad enough to cover all the rules with which we are here concerned. Section 241 authorizes the board to make rules "to provide for the protection of workmen in connection with" construction work. This may be reasonably construed to mean the protection of workmen in the vicinity of the work from dangers arising from the construction work. This would include not only the construction workmen themselves but also the factory workmen who might be endangered by the construction work.

Such an interpretation of subdivision 6 of section 241 would be in accordance with the principle that the Labor Law should be construed "liberally in an endeavor to apply the Labor Law's protection where protection is needed" (*Red Hook Cold Stor. Co.* v. *Department of Labor*, 295 N. Y. 1, 7, *supra*). That the protection of section 241 of the Labor Law embraces all persons lawfully on the premises who may be endangered by the work is implied in *Brennan* v. *M. L. P. Builders Corp.* (262 N. Y. 464) holding that the statute enured to the benefit of a person who came on the premises looking for work but who had not been hired at the time of the accident. Various sections of the Labor Law, which do not expressly specify the class of persons for whose protection they were designed, have been construed as enuring to the benefit of all persons lawfully on the premises (*Ursprung* v. *Winter Garden Co.*, 183 App. Div. 718, 733; *Whitehouse* v. *Single*, 217 App. Div. 204; cf. *Racine* v. *Morris*, 201 N. Y. 240; *Jolles* v. *3720 Corp.*, 163 Misc. 51).

The respondent recognizes that, under the authorities, workmen other than employees of the particular defendant sought to be held liable are protected by the provisions of section 241 (see, e.g., *Rufo* v. *Orlando*, 309 N. Y. 345; *Jordan* v. *City of New York*, 3 A D 2d 507, affd. 5 N Y 2d 723). It concedes that the statutory protection applies to workmen employed by others but it insists that they must be *construction* workmen. So long

as they are construction workmen, it is recognized that they are covered even though their part of the construction project may be wholly unrelated to the defendant's work. There is no reason in principle or in the language of the statute to limit the scope of the statute in this way. Where construction work is being carried on in a factory building by several contractors, while the factory is in active operation, employees of the factory operator may be just as much endangered by the act of one of the contractors, as the employees of other contractors working on other parts of the project. There is no reason to attribute to the Legislature an intent to withhold the benefit of section 241 from the factory employees.

However, as has already been noted, there is no need in this case to determine the question of the scope of section 241 since the rules are validly authorized by sections 28 and 200 in any event, and the rules plainly provide for the protection of persons in the position of the plaintiff.

Section 241 of the Labor Law expressly provides that the '' owners and contractors '' shall be responsible for compliance with the rules adopted thereunder. There is no similar provision in sections 28 and 200. The question of whether section 241 of the Labor Law is applicable, rather than one of the other sections of the law, may therefore be important in a case in which an owner or general contractor is sought to be held liable for the default of a contractor or subcontractor who is primarily responsible for compliance with the statute and rules (*Komar* v. *Dun & Bradstreet Co.*, 284 App. Div. 538, *supra*; *Olsommer* v. *Walker & Sons,* 4 A D 2d 424, affd. 4 N Y 2d 793). But no such problem is involved in this case. The action here was brought against the contractor who was under the primary obligation to comply with the statute and rules.

The principal substantive rule which the plaintiff was entitled to have submitted to the jury was rule 23–3.9. The first sentence of that rule reads as follows: '' Every opening or place into which a person may fall shall be provided with a safety railing as specified in rule 23–3.24 or shall be otherwise effectively protected.''

Rule 23–3.24 reads as follows: '' Safety Railing. Unless otherwise herein specified, safety railings shall consist of 2″ x 4″ wooden rail not less than 36 inches nor more than 42 inches above the walking level, securely supported by 2″ x 4″ posts at intervals of not more than eight feet with a 1″ x 4″ midrail and a *toe board* at least four inches high. The handrail shall be smooth and free from splinters or protruding nails. Other

material or construction may be used provided the assembly assures equivalent safety."

The refusal of the trial court to charge these substantive rules cannot be disregarded as nonprejudicial error. A violation of the rules would not give rise to absolute liability, nor would it constitute negligence per se (*Schumer* v. *Caplin*, 241 N. Y. 346; *Teller* v. *Prospect Heights Hosp.*, 280 N. Y. 456) but it would constitute evidence of negligence which the plaintiff was entitled to have the jury consider.

The judgment and order appealed from should be reversed and a new trial ordered.

All concur, WILLIAMS, J., in result; KIMBALL, J., not participating. Present — McCURN, P. J., KIMBALL, WILLIAMS, GOLDMAN and HALPERN, JJ.

Judgment and order reversed on the law and a new trial granted, with costs to the appellant to abide the event.