OPINION OF THE COURT
Aaron D. Bernstein, J.
The question presented in this article 78 proceeding is the date from which the petitioner is entitled to reimbursement for private duty nursing care furnished the claimant, assuming the claimant’s condition entitled her to such care. The claimant, petitioner’s mother, was hospitalized from July 6, 1979 to July 30, 1979 and again from September 29, 1979 until her death on November 9, 1979. Although petitioner’s papers are not in proper form and are prolix and contain irrelevant material, the court will consider this matter on its merits.
Subdivision 2 of section 365-a of the Social Services Law, dealing with the care, services, and supplies furnished under Medicaid, was amended to include the services of pri *497 vote duty nurses. The amendment (L 1979, ch 444, § 2) was passed by both houses of the Legislature on June 16, 1979, approved by the Governor on July 5, 1979, and by its terms was effective April 1, 1979. It provides in pertinent part: “(k) care and services of * * * private duty nurses * * * shall only be provided in accordance with regulations of the department of health.” The regulations implementing this paragraph (10 NYCRR 85.33) became effective upon their October 9, 1979 filing with the Department of State. Section 85.33 (g) (1) of title 10 of the Official Compilation of Codes, Rules and Regulations of the State of New York provides that reimbursement for nursing services “shall be in accordance with fees developed by the Department of Health and approved by the State Budget Director.” The department prepared various changes in and schedules for the State Medical Handbook, including a schedule of fees approved by the Director of the Budget, and sent these out to its agencies on November 16, 1979. The court notes that several footnotes contain the following statement: “As a result of chapter 444 of the laws of 1979, private duty nursing services rendered in a medical facility and in accordance with the regulations of the Department of Health are reimburseable under the Medical Assistance Program as of October 1, 1979.” Copies of that material were supplied to the Department of Social Services since it is required to pay for care, services and supplies approved by the Department of Health, and it had to set up its own operating procedures.
Claimant’s physicians requested approval for private duty nursing care required during her first confinement. The local agency denied the request on October 3, 1979 on the ground the effective date for such coverage had not been determined since it depended on the promulgation of regulations and the approval of various changes in procedures and fee schedules. Her physicians again requested approval for such care during her second confinement and, although denial of that request is not before the court, the request was never approved.
Both requests were considered at a fair hearing held on December 14, 1979. Representatives of the Department of Health’s local agency testified that, because internal operat *498 ing guidelines had still not been made final, the agency could not yet determine eligibility for private duty nursing care. The hearing officer, after quoting from chapter 444 of the Laws of 1979, ruled: “NYC Dept. Soc. Serv. was correct in not paying yet, since NYS Dept. Health has no regulations yet to cover this. But when the regs. are enacted, the agency must pay, retroactively, according to the regs.” Respondent’s determination, although termed an affirmance, modified the hearing officer’s decision to the extent of providing that reimbursement may be had only for care provided after October 9, 1979, the effective date of the Department of Health’s regulations (10 NYCRR 85.33).
As respondent points out, both departments are responsible for the furnishing of medical assistance to eligible residents, and it is the responsibility of the Department of Health to establish and maintain standards for medical and hospital care. It was therefore authorized to promulgate the rules, regulations and procedures required to enable it to discharge its responsibility. As respondent contends, an agency’s interpretation of a statute it administers is entitled to great weight, unless such interpretation is irrational. In the case at bar, respondent contends payment may be authorized only for services initiated after the October 9, 1979 effective date of the regulations since the Legislature intended this benefit to be available only after the appropriate regulations were promulgated.
The primary function of an administrative agency is to execute the will of the Legislature, usually by applying or enforcing a statute stating the legislative policy (Faingnaert v Moss, 295 NY 18; Matter of Mouakad v Ross, 274 App Div 74, mot for lv to app granted 274 App Div 877, app dsmd 298 NY 922). The Legislature may authorize an agency to establish rules and regulations for the adminstration of a statute in order to give effect to legislative policies (Panama Refining Co. v Ryan, 293 US 388; United States v Grimaud, 220 US 506; Matter of Levine v Whalen, 39 NY2d 510; People v Klinck Packing Co., 214 NY 121; Matter of New York Edison Co. v Maltbie, 244 App Div 436; Brown v University of State of N. Y., 242 App Div 85, affd 266 NY 598).
*499 Under its power to make rules and regulations, an agency may not adopt any which contravene or conflict with the statute (Matter of Humphrey v State Ins. Fund, 298 NY 327; Matter of Meit v P.S. & M. Catering Corp., 285 App Div 506; Komar v Dun & Bradstreet Co., 284 App Div 538); which are inconsistent with the design and purpose of the statute (Matter of Humphrey v State Ins. Fund, supra; Matter of Meit v P.S. & M. Catering Corp., supra; Matter of Ryan v Finegan, 166 Misc 548, affd 253 App Div 713) ; which alter the statute (Pollard v Trivia Bldg. Corp., 291 NY 19; Komar v Dun & Bradstreet Co., supra); add to the statute (Matter of Rosenbluth v Finkelstein, 300 NY 402; Matter of Cherry v Board of Regents of Univ. of State of N. Y., 289 NY 148); or extend, limit, or alter the statute (Dun & Bradstreet v City of New York, 276 NY 198); or limit (Matter of Swalbach v State Liq. Auth., 7 NY2d 518; Matter of Gross v New York City Alcoholic Beverage Control Bd., 7 NY2d 531; Matter of Dowsey v State Liq. Auth., 7 NY2d 795; Brown v University of State of N. Y., supra).
As respondent points out, the interpretation or construction of a statute by the agency charged with its administration will be upheld if it is not irrational or unreasonable (Matter of Lumpkin v Department of Social Servs. of State of N. Y., 45 NY2d 351, app dsmd 439 US 1040; Matter of Bernstein v Toia, 43 NY2d 437; Matter of Howard v Wyman, 28 NY2d 434), or if it has a rational (Matter of Condé Nast Pub. v State Tax Comm., 51 AD2d 17, mot for lv to app den 39 NY2d 889; Wachstein v General Acc., Fire & Life Assur. Corp., 36 AD2d 963) or a reasonable basis in law (Red Hook Cold Stor. Co. v Department of Labor of State of N. Y., 295 NY 1; Vallina v Wright & Kremers, 7 AD2d 101; Matter of Going v Kennedy, 5 AD2d 173, affd 5 NY2d 900, remittitur amd 5 NY2d 1021).
In the case at bar, there is no merit to respondent’s contention that the Legislature intended this benefit to be available only after regulations were promulgated. Although the Legislature may confer upon an agency the power to put a statute into effect (Miller v Mayor of New *500 York, 109 US 385; 2 NY Jur 2d, Administrative Law, § 44), it did not do so here. The legislation, by its clear terms, made this benefit available April 1, 1979 to those recipients who could comply with the requirements to be promulgated by the agency. Neither the time lag between the enactment of the statute and the agency’s eventual promulgation of its various rules, regulations, procedures and schedules, nor the provisions of the statute itself allows it to arrogate to itself the authority to determine when benefits shall begin to be available. “Laws are made by the law-making power and not by administrative officers acting solely on their own ideas of sound public policy, however excellent such ideas may be.” (Matter of Picone v Commissioner of Licenses of City of N. Y., 241 NY 157, 162.) The court concludes the determination of the respondent modifying the decision of its hearing officer was contrary to the wording of the statute, had no basis in law and was therefore arbitrary and capricious. The application is granted to the extent of remanding this matter to the respondent for further proceedings not inconsistent herewith.