OPINION OF THE COURT
Melvyn Tanenbaum, J.
This motion by defendants and cross motion by plaintiffs each seeking summary judgment (motion No. 14,599) and the motion by plaintiffs for leave to serve a supplemental complaint and cross motion by defendants for leave to serve an amended answer (motion No. 9,770) are consolidated in the interest of judicial economy and are determined as follows:
In this action pursuant to State Finance Law article 7-A, plaintiffs in their capacity as citizens and taxpayers of the State of New York and as members of the Board of Education of Huntington Union Free School District seek injunctive relief and a judgment declaring that (1) Education Law § 3602 is unconstitutional and contrary to statute to the extent that it provides for formulas in the calculation of State aid to school districts predicated upon inaccurate data not subject to verification and (2) plaintiffs are entitled to retroactive and *222 continuing adjustment of State aid provided to them upon the basis of such inaccurate data.
The alleged misappropriations arise from a series of legislative enactments between 1977 and 1982 beginning with a direction that the State Tax Commission provide a space on the State income tax return form for taxpayers to indicate the school district of their residence (L 1977, ch 309). Subsequently, by amendments to Education Law § 3602, the formulas for distribution of Low-Income Supplemental School Aid (LISSA) (L 1980, ch 53) and second-tier operating aid payments (L1981, ch 53) were established which included as a major factor in each formula the gross income of the residents of each district. Pursuant to the mandate contained in Education Law § 3602 (20) (b) (since repealed by L 1985, ch 53, § 46), the State Tax Commission adopted regulations necessary to calculate such income data (20 NYCRR part 2000). 20 NYCRR 2000.2 provides, in effect, that the districts’ adjusted gross income shall be calculated by the Department of Taxation, and in turn by the Education Department, by reference to the school district code number inserted by the taxpayer on each personal income tax return. Designation of a school code, even if incorrectly corresponding to the taxpayer’s residence address or contrary to a designation of the district by name, determines absolutely the school district to which the taxpayer’s income is attributable. Where no designation is made, the taxpayer’s income is not considered.
Utilizing these formulas and mechanisms for determining plaintiff school district’s adjusted gross income, LISSA and Tier II operating payments were made commencing with the school year 1980-1981 in each instance based upon data gathered from the tax year two years prior, as required in the formula.
There is no question but that the data obtained with respect to plaintiff school district was grossly inaccurate and that the payments made predicated upon the formulas which utilized district adjusted gross income were likewise inaccurate. Major disparities have been demonstrated showing, inter alia, in 1980 an aberrantly high ratio of 75.82% of tax returns to population in the plaintiff school district, a ratio which is more than twice the State-wide average and more than three times that of other districts in the Town of Huntington. It appears that the Tax Commission’s attribution of such an unlikely high number of returns to the plaintiff school district may not be its fault. Rather, it may be the result merely of *223 taxpayer confusion in designating the correct school code where the school district bears the same name as a post office and township, each encompassing geographical areas broader than the school district itself. Moreover, the design of the regulation itself to some degree may even promote a casual if not deliberate obfuscating attitude on the part of taxpayers since, in large measure, distribution of State funds is inversely proportional to the district’s gross income. This infirmity becomes fatal when taken together with proper adherence to the confidentiality requirements of Tax Law § 697 (e) prohibiting disclosure by the State of any of the particulars reported in the tax returns so as to render impossible verification of the base figure upon which aid is determined.
The disparities created by this bureaucratic implementation of the statutory mandate were realized almost immediately after adoption and became the subject of legislative and administrative studies which recognized that faulty data was consistently being provided, in some instances resulting in an inequitable distribution of State education aid among the various school districts. In particular the Huntington School District was cited as a flagrant example (Faulty Data Used to Distribute a Quarter of a Billion Dollars in State Aid Money, Assembly Committee on Oversight, Analysis and Investigation, June 16, 1981; School District Income Data Report, Joint Report by State Department of Taxation and Finance and Education Department, Oct. 1981; 1980 New York State School District Income Data for Use in 1982-83 School Aid Payments, Mar. 22, 1982, New York Division of the Budget; Preliminary Analysis of Relationship Between 1980 Population Data and 1980 New York State Income Tax Returns by School District, Mar. 26, 1982, New York Division of the Budget). In response, the Legislature enacted Laws of 1984 (ch 889) which provided a procedural mechanism to redress the perceived inequities including a direction that an administrative appeals process be established by the State Tax Department and a means to verify the accuracy of the income data which, in effect, dismantled the confidentiality barrier under Tax Law § 697 (e) by requiring production of lists to appropriate school superintendents of the permanent address for each taxpayer whose return indicated that the taxpayer is a resident of such school district.
After service of the first of these motions to be determined and prior to submission, plaintiffs availed themselves of the opportunity to have such computer generated lists provided. *224 The information conclusively demonstrates that, as to the income data derived from the 1983 tax returns upon which distribution to plaintiff school district for the school year 1985-1986 is to be calculated, the data before correction was in substantial error in attributing at least 45% more income (based upon at least 43.9% more returns) to the district than actually should have been properly attributable to it. Extrapolating to prior years based upon what appears to be a warranted assumption that such State-provided information is comparable, and in the absence of any showing that the figures actually used by defendants were in fact accurate, the court is constrained to conclude that substantial errors in income data gathering have occurred resulting in similar disparities with respect to the gross district income of the Huntington School District since 20 NYCRR 2000.2 was first applied to the 1978 State income data for the school year 1980-1981 disbursement.
Defendants concede, as they must, that the Legislature had the authority to provide for school aid through a formula predicated upon the wealth of each school district (Board of Educ. v Nyquist, 57 NY2d 27 [1982]). By implication, this authority is premised upon the ability to obtain accurate data, a function delegated in this case to a State administrative agency. It is clear, however, that in attempting to carry out the legislative purpose, the bureaucracy so charged failed to develop a mechanism, at least as to the plaintiffs before this court, which was reasonably calculated to effectuate the purpose of the statute. The primary function of an administrative agency is to execute the will of the Legislature and the Legislature may authorize an agency to establish rules and regulations for the administration of a statute in order to give effect to legislative policies (Matter of Levine v Whalen, 39 NY2d 510 [1976]). However, under its power to make rules and regulations, an agency may not adopt any which contravene or conflict with the statute, are inconsistent with the design and purpose of the statute, or which extend, limit or alter the statute (see, Matter of Levine v New York State Dept. of Social Servs., 106 Misc 2d 496 [Sup Ct, Kings County 1980], and citations therein at p 499). In the instant matter, the Legislature properly performed its function, the regulation-making body did not. An administrative problem was created, was recognized by the Legislature, the plaintiffs and the State agencies early on and yet no effective remedial action was taken. Thus it is of no consequence for defendants to argue *225 that ameliorative steps were taken through a program to better inform the public of the importance of accurate school code reporting or that the solution to this administratively created problem is for the Legislature, not the courts, to address. In the final analysis, after affirmation of the validity of the legislative action, what remains is simply an action for money due which defendants assert cannot be maintained due to the purported unavailability of the information necessary to support plaintiffs’ claims.
Leaving aside the issue of whether other administrative procedures could have been proposed which would have, provided proper distribution of funds to plaintiff school district, the court recognizes that there now exist such effective remedial devices to eliminate the disparities which caused the complained of revenue loss. Without deciding whether the Legislature has the authority to prohibit Laws of 1984 (ch 889) from having retroactive effect, the court need only find that nothing in the remedial enactment so limits application of the procedures set forth therein. In the absence of a clear showing that they are to be afforded prospective application only "remedial statutes are liberally construed to carry out the reforms intended and to promote justice.” (McKinney’s Cons Laws of NY, Book 1, Statutes § 321.)
Accordingly, the court finds that defendants’ use of the data gathering mechanism promulgated under 20 NYCRR 2000.2 was arbitrary and capricious to the extent that it was applied to administer distribution of any State aid funds to plaintiff school district pursuant to Education Law § 3602. The court further finds that plaintiffs are entitled to adjustments of all disbursements made for the school years 1980-1981 through 1984-1985 to the extent that said disbursements were predicated upon any formula utilizing said data gathering mechanism. The court therefore directs defendants to forthwith provide access to such income data for said year and to utilize or permit utilization of all procedures afforded under Laws of 1984 (ch 889), including production of computer lists generated by similar application of software used to secure the correct information for the 1983 tax year, and to make all necessary adjustments of said disbursements. By cooperative use of this available computer technology the parties can thus participate in a prudent solution to their problem rather than perpetuating an unnecessary dispute.
Except as granted hereinabove, all other relief requested in the complaint is denied.
*226 In view of this determination, plaintiffs’ motion to serve an amended complaint and defendants’ cross motion to serve an amended answer are denied as moot.