■ SHELDON DUMAIN et al., Individually and Constituting the Board of Education of the Huntington Union Free School District, Respondents, v HUGH L. CAREY, as Governor of the State of New York, et al., Appellants.—In an action, *inter alia,* for declaratory and injunctive relief, declaring that Education Law § 3602 is unconstitutional to the extent that it provides for formulas in the calculation of State aid to school districts predicated upon inaccurate data not subject to verification, the defendants appeal from so much of a judgment of the Supreme Court, Suffolk County (Tanenbaum, J.), dated March 12, 1986, as denied their motion for summary judg-

ment dismissing the complaint and granted the plaintiffs' cross motion for summary judgment to the extent of (1) declaring that the defendants' use of the data-gathering mechanism pursuant to 20 NYCRR 2000.2 was arbitrary and capricious, as applied, to administer the distribution of State aid funds to the plaintiff Huntington Union Free School District under Education Law § 3602, (2) adjudging that the plaintiffs are entitled to adjustments of all disbursements made for the school years 1980-1981 through 1984-1985 to the extent that the disbursements were predicated upon any formula utilizing that data-gathering mechanism, and (3) directing the defendants to provide the plaintiffs access to the income data available for the school years 1980-1981 through 1984-1985 and to utilize procedures under Laws of 1984 (ch 889) to correct the information for the 1983 tax year and pay all necessary adjustments for disbursements.

Ordered that the judgment is reversed insofar as appealed from, on the law, with costs, the plaintiffs' cross motion for summary judgment is denied in its entirety, and the defendants' motion for summary judgment is granted to the extent that it is declared that Education Law § 3602 is constitutional insofar as it allocates State aid to education on a formula based on income tax data, and that the actions of the defendants in using data gathered pursuant to 20 NYCRR part 2000 in implementing such formula were not arbitrary or capricious.

In 1980, the State of New York began determining the relative amounts of monetary aid it would distribute to the school districts within its boarders by the use of a formula based upon each district's adjusted gross income per pupil (see, Education Law § 3602 [20] [a], as amended by L 1980, ch 53, § 20). In anticipation of this new formula, Tax Law § 658 (a) was amended to require the State Tax Commission to provide a space on income tax returns where the taxpayer could indicate, by use of a three-digit code, the school district within which he resided (see, L 1977, ch 309; 1977 NY Legis Ann, at 145 [Governor's approval mem]). Pursuant to the statutory authority contained in Education Law § 3602 former (20) (b), the Tax Commission adopted regulations governing the computation of a school district's adjusted gross income (see, 20 NYCRR part 2000). Under those regulations a school district's adjusted gross income is to be determined by adding the amounts of New York adjusted gross income of resident individuals reported on the returns on which the school district is clearly indicated (see, 20 NYCRR 2000.2 [c] [1]). A

school district is clearly indicated only if a school district code number is clearly set forth on the return and that code number is the code number of a school district located in whole or in part in the county which is stated on the return to be the taxpayer's county of residence (see, 20 NYCRR 2000.2 [c] [2] [i]).

Shortly after the State began to distribute State aid to the local school districts based upon this income data, concerns were expressed as to the accuracy of this data. As a result of taxpayer ignorance or apathy, school district code numbers were not entered on the returns, or the code number provided was incorrect. Laws of 1981 (ch 53) directed the Department of Taxation and Finance and the Education Department to undertake a joint study of means to modify and improve the collection of income data and to submit a report to the Legislature within 120 days. This report was published in October 1981 and set forth various proposals to improve both the completeness and accuracy of the reporting of school district codes on individual tax returns. The proposals for improving accuracy (the sole point raised by the petitioners in this action) required legislative action to relax the stringent confidentiality provisions of Tax Law § 697 (e). No action was taken by the Legislature on this report until the enactment of the Laws of 1984 (ch 889).

In July 1982, the plaintiffs, members of the Board of Education of the Huntington Union Free School District, commenced this action, *inter alia,* seeking a judgment declaring Education Law § 3602 and the regulations promulgated thereunder unconstitutional as violative of the right of equal protection. They also sought to declare the defendants' continued use of inaccurate income data arbitrary and capricious. In 1984 the defendants moved for summary judgment, relying upon Laws of 1984 (ch 889). Under that act, an appeals process was set up to resolve disputes between local school districts and the Department of Taxation and Finance regarding the district's adjusted gross income as determined by the Department (see, L 1984, ch 889, § 1). To aid in the resolution of these disputes, an exception to the secrecy provision of Tax Law § 697 (e) was created and the Department of Taxation and Finance was required to furnish the Commissioner of Education and the appropriate school district superintendents with a listing of the permanent resident address of each taxpayer who filed a personal tax return with a school district code number indicating that the taxpayer is a resident of the school district (see, Tax Law § 697 [k], as added by L 1984, ch

889, § 2). Finally, the Legislature created a task force on income verification (see, L 1984, ch 889, § 3). The plaintiffs cross-moved for summary judgment, on the ground that the enactment of Laws of 1984 (ch 889) constituted a recognition by the defendants of the correctness of the plaintiffs' position.

The court granted the plaintiffs' cross motion for summary judgment to the extent of declaring that the defendants' use of the data-gathering mechanism promulgated under 20 NYCRR 2000.2 was arbitrary and capricious as applied to the situation at bar. As and for the measure of damages, the court ordered the defendants to make the necessary adjustments of disbursements paid to the plaintiff school district for the school years 1980-1981 through 1984-1985 by use of the procedures afforded under Laws of 1984 (ch 889). The defendants appeal, and we reverse.

With the 1980 amendment to Education Law § 3602, the Legislature manifested an intent that the calculation of State aid to school districts be based upon the combined adjusted gross income of the residents of each district. In keeping with that intent, the Tax Commission established regulations for the determination of each district's adjusted gross income. At this point, it was clearly reasonable for the Commission to assume that taxpayers would accurately report their school district code number on their tax returns. In short, the means chosen by the Commission to effectuate the purposes of Education Law § 3602 former (20) were rational and consistent with the manifestation of legislative intent (see, Matter of Bernstein v Toia, 43 NY2d 437, rearg denied 43 NY2d 950).

We do not find that the district income data, considered as a whole, were grossly inaccurate as alleged by the petitioners. The selected verification program instituted pursuant to Laws of 1984 (ch 889) found significant income overstatement in less than 3% of the school districts (22 of 737 districts) and that the amount of income so overstated was slightly over 1% of the total income reported on all New York long-form tax returns for the year 1983. The use of such data was thus not arbitrary and capricious.

While the plaintiffs concede that the use of the total adjusted gross income of taxpayers within a school district is proper in classifying districts for State aid, they contend that inaccuracy in such totals violates both the Federal and State Constitutions. We do not agree. In matters concerning the State's budget, equal protection does not require that all classifications be made with mathematical precision (see, Matter of Tolub v Evans, 58 NY2d 1, appeal dismissed 460 US

1076). Even flagrant unevenness in application will not prevent a statute from passing constitutional muster *(see, Matter of Long Is. Light. Co. v State Tax Commn.,* 45 NY2d 529; *Heimbach v State of New York,* 59 NY2d 891, *appeal dismissed* 464 US 956). Rubin, J. P., Eiber, Kunzeman and Sullivan, JJ., concur. *[See,* 131 Misc 2d 221.]