BRENTWOOD UNION FREE SCHOOL DISTRICT, Respondent, v
STATE OF NEW YORK et al., Appellants, et al., Defendants.

Second Department, October 16, 1989

## APPEARANCES OF COUNSEL

*Robert Abrams, Attorney-General (Peter H. Schiff* and *Peter G. Crary* of counsel), for appellants.

*Cahn, Wishod Wishod & Lamb (Richard C. Cahn* of counsel), for respondent.

## OPINION OF THE COURT

Per Curiam.

State aid to public education is allocated to school districts such as the plaintiff according to a complex formula *(see,* Education Law § 3602) that since 1980 has included a component based on the total adjusted gross income reported by taxpayers residing in each school district. The total adjusted gross income of taxpayers within a given district has an inverse relationship to the amount of State aid allocated to that district, i.e., the higher the total adjusted gross income within the district, the less State aid that district will receive, and vice versa. Shortly after the inclusion of this income component, it became apparent that taxpayers were incorrectly reporting school districts on their income tax forms *(see,*

Tax Law § 658 [a]; *see, Dumain v Carey,* 133 AD2d 206). As a result of these errors, it was claimed that the total adjusted gross income of certain school districts was improperly inflated, thereby decreasing the school aid allocation to those districts.

In response to this problem, which was recognized at least as early as 1981, the Legislature enacted Laws of 1984 (ch 889), which sought to identify and correct the more obvious inaccuracies. The New York State Department of Taxation and Finance promulgated rules and regulations *(see,* 20 NYCRR 2001.1 *et seq.)* to effectuate the purpose of this statute and entered into cooperative agreements with the New York State Commissioner of Education and the New York State Director of the Budget (hereinafter the State defendants) with respect to the validation and correction of the total adjusted gross incomes of *"identified* school districts". Both the regulations *(see,* 20 NYCRR 2001.1 *et seq.)* and the cooperative agreements entered into by the State defendants defined an *"identified* school district" as a school district in which the number of 1980 personal income tax returns filed from that district exceeded 67% of the 1980 United States census population over 17 years of age for that district. Of the 737 school districts in the State, only 24 met this criterion and were declared to be identified school districts eligible to participate in the income verification and appeals program (hereinafter IVP). The plaintiff Brentwood Union Free School District (hereinafter Brentwood) did not meet the aforementioned criterion and was not eligible to participate in the IVP. However, an adjacent district, the defendant Bayshore Union Free School District (hereinafter Bayshore), was denominated an identified school district and did, in fact, participate in the IVP.

Pursuant to 20 NYCRR 2001.3, computer printouts consisting of the addresses of 16,626 taxpayers who listed Bayshore as their school district on their 1983 personal income tax returns were forwarded to the Bayshore Superintendent of Schools. The Bayshore Superintendent of Schools and a secretary in his office then reviewed the entire list to verify that the addresses were within the Bayshore school district. Upon finding an address not within Bayshore, the Superintendent, acting pursuant to the regulations, listed the correct school district code for that address. The corrected printouts were then returned to the District Superintendent of the Second Supervisory District of Suffolk who certified them to the

Department of Taxation and Finance *(see,* 20 NYCRR 2001.3 [f]). Through this process it was determined that 4,966 taxpayers had erroneously listed Bayshore as their school district and as a result, the total adjusted gross income of Bayshore had been overstated by $99,272,193. Conversely, the IVP revealed that 3,870 taxpayers who lived within Brentwood had not listed that school district code on their 1983 personal income tax forms and the total adjusted gross income of Brentwood was erroneously understated by $75,470,930. When the New York State Department of Taxation and Finance corrected the respective totals of adjusted gross income for the affected school districts, and the formulas set forth in Education Law § 3602 were applied, Brentwood received approximately $770,000 less in State aid than it anticipated, while Bayshore received approximately $1,000,000 more than it anticipated. Brentwood subsequently commenced this action, *inter alia,* to have the foregoing adjustments declared invalid and to recover the amount of school aid which it anticipated.

The Supreme Court upheld Brentwood's claims that the State defendants misinterpreted and misapplied the provisions of Laws of 1984 (ch 889) by not permitting Brentwood to challenge Bayshore's corrections which resulted in an increase in Brentwood's total adjusted gross income and a concomitant decrease in its school aid (135 Misc 2d 1105). We disagree.

We find that the methods chosen by the State defendants to effectuate the purposes of Laws of 1984 (ch 889) were rational and consistent with the manifestation of legislative intent underlying its enactment *(see, Dumain v Carey,* 133 AD2d 206, *supra; see also, Matter of Bernstein v Toia,* 43 NY2d 437). Indeed, the statute added Tax Law § 171 (former [twenty-fifth]), which directed the New York State Tax Commission: "to design, develop and implement an *appeals process for the purpose of resolving disputes between local school districts and the department of taxation and finance* in regard to a school district's valuation of total New York adjusted gross income as determined by the department, for use in determining state aid to education" (emphasis supplied). Tax Law § 171 (former [twenty-fifth]) further provided for the creation of cooperative agreements among the New York State Tax Commissioner, the New York State Education Commissioner and the New York State Director of the Budget with respect to: "the validation and *correction* of the total New York adjusted gross income of *identified school districts* for use in the design and development of the appeals process.

The term identified school districts shall be defined in such agreement so as to provide appropriate opportunities for validating the accuracy of income data for *selected school districts"* (emphasis supplied).

A plain reading of the foregoing statute clearly indicates that the Legislature did not intend to require the verification and/or cross verification of addresses for all 737 school districts in the State, as Brentwood contends. Rather, only the verification of the accuracy of income data for *selected* school districts was contemplated. The selected school districts were to be those "identified school districts" as defined in the cooperative agreements and the appropriate regulations *(see,* 20 NYCRR 2001.2 [a]). There is no claim made on this appeal that the definition of "identified school district" is arbitrary, capricious or irrational, nor is there any dispute that Bayshore comes within the definition of "identified school district" and Brentwood does not. It is therefore obvious that Bayshore was eligible for inclusion in the IVP but Brentwood was not.

As a result of its verification of the addresses supplied by the New York Department of Taxation and Finance, Bayshore found itself in conflict with that department regarding the valuation of Bayshore's total New York adjusted gross income. It was to resolve that conflict and others like it that an appeals process was established under Laws of 1984 (ch 889) and set forth in 20 NYCRR 2001.3. Contrary to the holding of the Supreme Court, the State defendants were not required by Laws of 1984 (ch 889) to construct an appeals process for the resolution of disputes between school districts (e.g., Brentwood and Bayshore) with respect to the valuation of total adjusted gross income for each district.

Evidence that the State defendants correctly interpreted and implemented their mandate under Laws of 1984 (ch 889) is found in the subsequent enactment of Laws of 1987 (ch 602) which addressed the continuing problem in achieving accuracy of the total adjusted gross income for each school district. The Legislature has recognized that total accuracy could best be achieved by means of a computerized system matching taxpayer addresses with school district codes. However, it has also recognized that the development of such a system will entail a multiyear effort and that in the interim the validation and correction process involving only selected, identified school districts is necessary. That the provisions of Laws of 1984 (ch 889) did not address situations such as that presented by Brentwood in this litigation has also been recognized and

remedied. Laws of 1987 (ch 602, § 4) amended Tax Law § 171 (twenty-fifth), *inter alia,* by adding thereto paragraph (b), which authorizes limited review of the results of an IVP performed by an identified school district such as Bayshore by a "receiver school district". A "receiver school district" is defined as a district that was assigned at least 50 tax returns as the result of the IVP performed by the identified district. Clearly, had this amendment been operative at the times referred to in this litigation, Brentwood would have been qualified as a receiver district and would have been entitled to review the results of Bayshore's IVP. However, by its terms, this statutory review procedure became effective only with respect to income used in computing school aid for the 1988-1989 school year.

It is presumed that in enacting an amendment, the Legislature intends to accomplish some underlying purpose and to effect a change in the existing law *(see,* McKinney's Cons Laws of NY, Book 1, Statutes § 191, at 353; *Mabie v Fuller,* 255 NY 194). The fact that the review procedure set forth in Tax Law § 171 (twenty-fifth) (b) is to have prospective application demonstrates that the creation of a right to review by a "receiver school district" such as Brentwood is a new right not provided for by Laws of 1984 (ch 889). Thus, it is clear that the State defendants' interpretation and implementation of Laws of 1984 (ch 889), insofar as relevant to the present matter, was correct.

◼ We further note that the remaining arguments raised by Brentwood on this appeal are without merit. Laws of 1984 (ch 889) called for not only the validation of the total New York adjusted gross income of the identified school district by means of the IVP, but also the *correction* thereof. Clearly, this correction was to be performed immediately to remedy the problem recognized as early as 1981, and discussed in *Dumain v Carey* (133 AD2d 206, *supra).* Hence, the IVP review mechanism was not created merely for the purpose of rendering a statistical study. Similarly, there is no validity in Brentwood's contention that, while the total adjusted gross incomes of the identified school districts could be reduced as a result of the elimination of tax returns erroneously listed for the identified districts, the total adjusted gross incomes of the school districts to which those addresses were properly attributable could not experience a concomitant increase. Rather, these computations are necessary to determine the "Alternate pupil wealth ratio" set forth in Education Law § 3602 (1) (k). In

essence, such a ratio involves determining the portion of the total State adjusted gross income (the sum of the adjusted gross income of all school districts) which each school district enjoys. Hence, a reduction in the adjusted gross income of one school district without a commensurate increase in the adjusted gross income of other school districts would render such a ratio useless as a basis for the distribution of State aid. Therefore, we uphold the State defendants' interpretation and implementation of Laws of 1984 (ch 889) in this case.

Accordingly, the judgment is reversed insofar as appealed from, on the law, with costs, the plaintiff's cross motion for summary judgment is denied in its entirety, and the motion of the State defendants for summary judgment is granted to the extent that it is declared that the interpretation and actions of the State defendants in implementing Laws of 1984 (ch 889) were not arbitrary or capricious and that the resulting calculations were properly utilized in computing the plaintiff's State aid allocations for the school years 1985-1986 and 1986-1987.

RUBIN, J. P., SULLIVAN, HARWOOD and BALLETTA, JJ., concur.

Ordered that the judgment is reversed insofar as appealed from, on the law, with costs, the plaintiff's cross motion for summary judgment is denied in its entirety, and the motion of the State defendants for summary judgment is granted to the extent that it is declared that the interpretation and actions of the State defendants in implementing Laws of 1984 (ch 889) were not arbitrary or capricious and that the resulting calculations were properly utilized in computing the plaintiff's State aid allocations for the school years 1985-1986 and 1986-1987.